FREEDMAN & TAITELMAN, LLP
MICHAEL A. TAITELMAN (SBN 156254)
mtaitelman@ftllp.com
JACQUELINE C. BROWN (SBN 177970)
jbrown@ftllp.com
JOSHUA G. BLUM (SBN 249082)
jblum@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Tel.: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Defendant NATIONAL CORRECTIVE GROUP, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA SMITH, LOIS ARTZ, ASHLEY HENDERSON, JANA SPERLING, and TONI NEILSON, on their own behalf and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>LEVINE LEICHTMAN CAPITAL PARTNERS, INC., LEVINE LEICHTMAN CAPITAL PARTNERS III, L.P., LEVINE LEICHTMAN CAPITAL PARTNERS III, LLC, MICHAEL SCHRECK, BRETT STOHLTON and NATIONAL CORRECTIVE GROUP, INC. (dba Corrective Solutions),<br><br>　　　　　Defendants. | Civ. No. 3:10-cv-0010 JSW<br><br>**CLASS ACTION**<br><br>DEFENDANT NATIONAL CORRECTIVE GROUP, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE COUNTS III, IV, AND VI OF THE FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Declarations of James P. Fox, Michael A. Ramos, Gregory D. Totten, Dianna Marie Valdez, Mike L. Wilhelms, and Joshua G. Blum and (Proposed) Order filed concurrently herewith]<br><br>Date:　　　June 11, 2010<br>Time:　　　9:00 a.m.<br>Courtroom:　11 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 11, 2010 at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, Courtroom 11, 19th floor, San Francisco, California 94102, defendant National Corrective Group, Inc. ("NCG") will and hereby does move the Court for an order striking Counts III (unfair business practices), IV (fraudulent misrepresentation) and VI (negligent misrepresentation) of the Plaintiffs' First Amended Complaint ("FAC") and awarding NCG its attorneys' fees and costs associated with this Motion.

The Motion is made on the grounds that these claims are barred pursuant to California Code of Civil Procedure section 425.16 because (1) they arise from NCG's exercise of its free speech and petition rights; and (2) Plaintiffs cannot establish by evidence admissible at trial a reasonable probability of prevailing on these claims

The Motion is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying declarations of James P. Fox ("Fox Decl."), Michael A. Ramos ("Ramos Decl."), Gregory D. Totten ("Totten Decl."), Dianna Marie Valdez ("Valdez Decl."), Mike L. Wilhelms ("Wilhelms Decl."), and Joshua G. Blum (regarding the date set for the hearing of the Motion), the pleadings, records and papers on file in this action, and such other oral and documentary evidence as the Court may deem necessary for adjudication of this matter.

DATED:  April 13, 2010                          FREEDMAN & TAITELMAN, LLP

                                                By:     /S/ M. Taitelman
                                                        MICHAEL A. TAITELMAN
                                                Attorneys for Defendant NATIONAL
                                                CORRECTIVE GROUP, INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...............................................................................................................1
II. SUMMARY OF ARGUMENT ..........................................................................................2
III. ISSUES PRESENTED.........................................................................................................3
IV. FACTUAL BACKGROUND..............................................................................................3
    A. California Bad Check Law......................................................................................3
    B. Criminal Bad Check Diversion Programs................................................................3
V. ARGUMENT.......................................................................................................................4
    A. Plaintiff's State Law Claims Are Subject to the Anti-SLAPP Statute......................4
        i. The State Law Claims Are Based on NCG's Petition Rights...................5
            a. NCG's Administration of the BCDP's Involved Issues Under Consideration or Review By Official Bodies Or Proceedings Authorized By Law ................................................................6
            b. NCG's Communications Are Protected By The Litigation Privilege And Therefore Also Fall Within Section 425.16.............................7
                1. NCG's Communications Were In Connection With Proposed Litigation Contemplated In Good Faith And Under Serious Consideration .....................................................8
    B. Plaintiffs Cannot Show A Reasonable Probability of Prevailing ...........................11
        i. The Litigation Privilege Bars Plaintiffs' State Law Claims ...................11
        ii. NCG is Immunite From Liability Because The District Attorneys Would Be Entitled To Immunity For The Same Acts ..............................12
        iii. NCG Is Not Liable to Plaintiffs Because It Acted In Good Faith ...........13
    C. Code of Civil Procedure Section 425.17 Does Not Apply to This Action ..............14
    D. NCG Is Entitled To Its Attorneys Fees and Costs ..................................................15
VI. CONCLUSION..................................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

Clement v. City of Glendale,
518 F.3d 1090 (9th Cir. 2008) ..................................................................................... 2, 13

Franklin v. Fox,
2000 U.S. Dist. LEXIS 19651 (N.D. Cal. Jan. 22, 2001) .................................................. 14

Hunt v. Check Recovery Systems, Inc.,
241 F.R.D. 505 (N.D. Cal. 2007) ..................................................................................... 15

Palmer v. Stassinos,
233 F.R.D. 546 (N.D. Cal. 2006) ..................................................................................... 15

Silberg v. Anderson,
50 Cal.3d 205 (1990) ......................................................................................................... 7

Verizon Delaware, Inc. v. Covad Communications Co.,
377 F.3d 1081 (9th Cir. 2004) ......................................................................................... 15

Vess v. Ciba-Geigy Corp. USA,
317 F.3d 1097 (9th Cir. 2003) ........................................................................................... 5

Weiner v. San Diego County,
219 F.3d 1025 (9th Cir. 2000) ......................................................................................... 13

### CALIFORNIA CASES

Blanchard v. DIRECTV, Inc.,
123 Cal.App.4th 903 (2004) .......................................................................................... 2, 7

Bradley v. Medical Board,
56 Cal.App.4th 445 (1997) ........................................................................................ 2, 12

Briggs v. Eden Council for Hope & Opportunity,
19 Cal.4th 1106 (1999) ..................................................................................................... 6

City of Cotati v. Cashman,
29 Cal.4th 69 (2002) ......................................................................................................... 5

Club Members for an Honest Election v. Sierra Club,
45 Cal.4th 309 (2008) ................................................................................................ 2, 15

Davis v. Municipal Court,
46 Cal.3d 64 (1988) ......................................................................................................... 13

Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,
117 Cal.App.4th 1138, (2004) ......................................................................................... 11

Flatley v. Mauro,
39 Cal.4th 299 (2006) ....................................................................................................... 7

HMS Capital, Inc. v. Lawyers Title Co.,
118 Cal.App.4th 204 (2004) ............................................................................................. 5

Home Ins. Co. v. Zurich Ins. Co.,
96 Cal.App.4th 17 (2002) ...................................................................................................... 12

Kashian v. Harriman,
98 Cal.App.4th 892 (2002) ..................................................................................................... 7

Ketchum v. Moses,
24 Cal.4th 1122 (2001) ......................................................................................................... 15

Morris v. Moore,
61 Cal.App.314 (1923) ......................................................................................................... 10

Navellier v. Sletten,
29 Cal.4th 82 (2002) ............................................................................................................... 5

Pitts v. County of Kern,
17 Cal.4th 340 (1998) ........................................................................................................... 13

Raining Data Corp. v. Barrenechea,
175 Cal.App.4th 1363 (2009) ................................................................................................... 5

Rubin v. Green,
4 Cal.4th 1187 (1993) ........................................................................................................... 12

Seltzer v. Barnes,
182 Cal.App.4th 953 (2010) ................................................................................................. 12

**FEDERAL STATUTES**

15 U.S.C. § 1692k(a)(2)(B)(i) ............................................................................................... 15

**CALIFORNIA STATUTES**

Cal. Civ. Code, § 47(b) ....................................................................................................... 7, 9

Cal. Code Civ. Proc. § 425.16 ................................................................................................ 5

Cal. Code Civ. Proc., § 425.17 ............................................................................................. 14

Cal. Pen. Code, § 476(a), (c) ................................................................................................... 3

Cal. Pen. Code, § 1001.63(d) ............................................................................................... 10

Cal. Pen. Code, § 1001.64 ...................................................................................................... 4

Cal. Pen. Code, §§ 1001.60 .................................................................................................... 3

I. **INTRODUCTION**

*Knowingly writing a bad check is a crime under California law.* Bad checks victimize merchants, service providers and the State of California, costing millions of dollars annually. *By their own admission, Plaintiffs and each member of the class are bad check offenders.*

To combat the growing epidemic of bad check writing and the huge burden such crimes place on District Attorneys, in 1985, the California Legislature enacted Penal Code section 1001.60, et seq., the criminal bad check diversion act ("BCDA"), to establish criminal bad check diversion programs ("BCDPs"). *The BCDA expressly authorizes BCDPs to be administered by private entities.* BCDPs have provided millions of dollars in restitution to victims of bad check offenders, and have saved the State of California millions of dollars in precious resources that otherwise would have been diverted to prosecuting bad check offenders. Defendant National Corrective Group, Inc. ("NCG") is a private entity that provides administrative services to District Attorneys for their BCDPs pursuant to contract as expressly authorized by the BCDA.

In a flourish of hyperbole and rhetoric, Plaintiffs seek to portray NCG as a nefarious and deceitful enterprise preying on "innocent" bad check offenders. In reality, NCG has helped numerous victims of Plaintiffs' crimes recover millions of dollars in criminal restitution. While refusing to acknowledge the criminality of their own conduct, Plaintiffs now sue NCG for violations of the Federal Debt Collection Practices Act ("FDCPA"), unfair business practices, fraud, and negligent misrepresentation. *Significantly, each of Plaintiffs' claims are expressly and solely based on NCG's legitimate communications to bad check offenders on behalf, and with the express authorization, of the District Attorneys in connection with the administration of the BCDPs.* See First Amended Complaint ("FAC"), ¶¶ 147, 160, 177, 186, 192-193, and 199. In fact, the FAC contains no allegation whatsoever that NCG has been operating without authorization, approval, or direction from District Attorneys.

This action is a classic example of an improper "strategic lawsuit against public participation" (a "SLAPP suit") that is expressly barred by California Code of Civil Procedure section 425.16, the "anti-SLAPP statute" ("Section 425.16"). Plaintiffs do not seek to vindicate cognizable rights. Instead, with concocted claims and a painfully strained attempt to make this

case about civil debt collection (which it is not), Plaintiffs seek to punish NCG for exercising its legitimate petition and free speech rights to obtain an economic advantage over it, in the hopes of putting companies like NCG out of business. To make matters worse, Plaintiffs do not even attempt to disguise the fact that they are seeking to hold NCG liable for its actions as the legitimate private administrator to the District Attorneys in connection with the BCDPs.

## II.     SUMMARY OF ARGUMENT

As demonstrated below, Plaintiffs' state law claims against NCG fall squarely within the broad ambit of the anti-SLAPP statute and should be dismissed for the following reasons:

*First,* Plaintiffs' state law claims arise from NCG's conduct taken in connection with and furtherance of petition activity as set forth in Section 425.16(e)(1) and (2). NCG's legitimate communications to bad check offenders on behalf, and with the express authorization, of the District Attorneys in connection with the administration of the BCDPs constitute issues under consideration or review by official bodies or proceedings authorized by law. NCG's communications are also subject to California Civil Code section 47(b) (the "Litigation Privilege"), and therefore, fall with Section 425.16(e)(1) and (2) for this additional reason. Blanchard v. DIRECTV, Inc., 123 Cal.App.4th 903 (2004).

*Second,* Plaintiffs cannot demonstrate a reasonable probability of prevailing on their state law claims against NCG because (a) each of Plaintiffs' state law claims is barred, as a matter of law, by the Litigation Privilege; (b) under California law, NCG is immune from liability because it administered the BCDPs at the request of the District Attorneys, who would be entitled to immunity had they administered the BCDPs themselves (Bradley v. Medical Board, 56 Cal.App.4th 445 (1997); and (c) NCG acted in good faith in its administration of the BCDPs on behalf of the District Attorneys. Clement v. City of Glendale, 518 F.3d 1090 (9th Cir. 2008).

*Third,* Plaintiffs' class action is not exempt under California Code of Civil Procedure section 425.17(b) from an anti-SLAPP motion because it is not brought *solely* in the public interest where Plaintiffs expressly seek statutory damages under the FDCPA that are available to named-plaintiffs only and not the class as a whole. Club Members for an Honest Election v. Sierra Club, 45 Cal.4th 309 (2008).

## III. ISSUES PRESENTED

A. Do Plaintiffs' state law claims "arise from" activity protected under the anti-SLAPP statute where they are based on NCG's legitimate communications to bad check offenders on behalf of the District Attorneys in connection with the BCDPs and as such fall within the scope of the Litigation Privilege?

B. Can Plaintiffs show a reasonable probability of prevailing on their state law claims where (1) their claims are absolutely barred by the Litigation Privilege and (2) NCG is immune from liability because it administered the BCDPs at the request of the District Attorneys, who would be immune for the same acts; and (3) NCG acted in good faith?

C. Is Plaintiffs' action brought *solely* in the public interest, thereby exempting it from an anti-SLAPP motion, where Plaintiffs seek relief different from and greater than the relief sought on behalf of the class as a whole?

## IV. FACTUAL BACKGROUND

### A. California Bad Check Law

California Penal Code section 476a makes the writing of a bad check a crime, punishable by up to one year in prison. Cal. Pen. Code, § 476(a), (c). In 1985, the California Legislature enacted the BCDA as part of its efforts to remedy the growing epidemic of bad check writing. Cal. Pen. Code, §§ 1001.60 et seq. The BCDA expressly authorizes BCDPs to be administered by private entities "under contract with the district attorney." Id., § 1001.60.

### B. Criminal Bad Check Diversion Programs

American Corrective Counseling Services, Inc. ("ACCS") is a former administrator of BCDPs for various District Attorneys in California. Wilhelms Decl., ¶ 3. Pursuant to certain written agreements, as expressly authorized by the BCDA, ACCS assisted the District Attorneys with the administration of the BCDPs by providing educational seminars, consulting, and administrative support services (collectively, the "Services Agreements"). Id., ¶¶ 3-4. In April 2009, NCG acquired the operating assets of ACCS. Id. The Services Agreements were assigned to NCG, and NCG assumed responsibility for the administration of the BCDPs for ACCS. Id.

A BCDP is a pre-complaint diversion program. See Cal. Pen. Code, § 1001.66. After an

1  offender writes a bad check and the victim attempts unsuccessfully to collect payment, the victim
2  files a crime report with the District Attorney's BCDPs.  Fox Decl., ¶ 7; Ramos Decl., ¶ 7;
3  Totten Decl., ¶ 7; Wilhelms Decl., ¶ 6.  The bad check writers are eligible for the BCDP only if
4  the crime report meets objective eligibility criteria justifying criminal prosecution as established
5  by the District Attorney.  Fox Decl., ¶¶ 6-7; Ramos Decl., ¶¶ 6-7; Totten Decl., ¶¶ 7-8.
6       After eligibility is confirmed, an official notice is then generated, offering the bad check
7  offender an opportunity to avoid criminal prosecution by voluntarily participating in an
8  educational seminar addressing the causes and prevention of bad check writing.  The notice is
9  approved, authorized by, and sent on behalf of the District Attorney pursuant to the Services
10 Agreement.  Fox Decl., ¶ 8; Ramos Decl., ¶ 8; Totten Decl., ¶ 9; Wilhelms Decl., ¶ 9-10.  If the
11 bad check offender chooses to participate in the BCDP, he or she must pay certain authorized
12 fees, including tuition for the educational class, and full restitution to the victim.  Cal. Pen. Code,
13 § 1001.64; see also  Fox Decl., ¶ 9; Ramos Decl., ¶ 9; Totten Decl., ¶ 9; Wilhelms Decl., ¶ 10.
14      The BCDP operates under the District Attorney's name, authority, and control.  Fox
15 Decl., ¶¶ 5, 6, 8; Ramos Decl., ¶¶ 5, 6, 8; Wilhelms Decl., ¶ 6.  Although NCG helps to
16 administer the BCDPs, the District Attorney retains full prosecutorial discretion and does not
17 delegate to NCG any aspect of that discretion.  Fox Decl., ¶ 5; Ramos Decl., ¶ 5; Wilhelms
18 Decl., ¶ 6.  All fees required of and collected from bad check writers are approved in advance by
19 the District Attorneys.  Likewise, the allocation between the District Attorneys, NCG, and the
20 victims of the amounts collected and recovered from bad check writers are also agreed upon in
21 advance with the District Attorneys.  Fox Decl., ¶ 9; Ramos Decl., ¶ 9; Wilhelms Decl., ¶ 5.
22      Each Plaintiff and member of the class wrote at least one bad check.  FAC, ¶¶ 82-83
23 (Christine Smith), 100 (Lois Artz), 112 (Ashley Henderson), 126 (Jana Sperling), 137 (Toni
24 Nelson), 147 (the class).  Each of them was offered an opportunity to participation in a BCDP
25 administered by NCG.  Id., ¶¶ 85, 101-102, 114-115, 128-130, 138.
26 **V.**   **ARGUMENT**
27     **A.**   **Plaintiffs' State Law Claims Are Subject to the Anti-SLAPP Statute**
28      A "SLAPP suit" is brought to chill the valid exercise of constitutional rights of freedom

of speech and petition for redress of grievances.  Cal. Code Civ. Proc., § 425.16(a).  Section 425.16 provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1).

A special motion to strike pursuant to Section 425.16 involves a two-step process.  First, the court determines whether the moving party has demonstrated that the challenged activity stems from protected activity.  If a prima facie showing has been made by the moving party, the court must then consider whether the plaintiff has demonstrated a probability of success on the challenged claim.  Id.; HMS Capital, Inc. v. Lawyers Title Co., 118 Cal.App.4th 204, 211-212 (2004).  The anti-SLAPP statute applies in federal court to state law claims.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003).

### i. The State Law Claims Are Based on NCG's Petition Rights

A defendant meets its burden under Section 425.16 by demonstrating that the conduct underlying the plaintiff's claim fits within one of the categories set forth in Section 425.16(e).  City of Cotati v. Cashman, 29 Cal.4th 69, 78 (2002).  Section 425.16(e) defines protected activity as:

> "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law ..."

The focus of the anti-SLAPP statute is "not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability – and whether that activity constitutes protected speech or petitioning."  Navellier v. Sletten, 29 Cal.4th 82, 92 (2002).  The "principal thrust or gravamen of the . . . cause of action" determines whether the anti-SLAPP statute applies.  Raining Data Corp. v. Barrenechea, 175 Cal.App.4th 1363, 1369 (2009).  ***When determining whether a cause of action "arises from" protected activity, Section 425.16 is to be "broadly construed."***  Cal. Code Civ. Proc., § 425.16(a); Briggs v. Eden Council

1  for Hope & Opportunity, 19 Cal.4th 1106, 1119 (1999) (emphasis added).

2      Plaintiffs' state law claims are expressly based on NCG's legitimate communications to
3  the bad check offenders, on behalf of the District Attorneys, in connection with the BCDPs.
4  Specifically, Count III for unfair business practices is based on NCG's conduct in administering
5  the BCDP.  See FAC, ¶ 186 ("The conduct alleged above is unlawful in that Defendants' so-
6  called 'bad check diversion programs' routinely violate the FDCPA and fail to conform to the
7  requirements and limitations of the BCDA.").  Count IV for fraudulent misrepresentation is
8  based on NCG's communications to the bad check offenders pursuant to the BCDPs.  FAC, ¶¶
9  192-195.  Plaintiffs allege that in communicating with the bad check offenders, NCG falsely
10 represented that "there is a substantial likelihood that the check writer will be prosecuted if he or
11 she does not pay the fees that defendants demand."  See FAC, ¶¶ 194-195.  Count VI for
12 negligent misrepresentation is also based on the NCG's communications to bad check offenders
13 "in connection with the bad check restitution program."  Id., ¶ 199.  Plaintiffs allege NCG
14 breached its duty to be truthful to the bad check offenders by "making the false representations
15 described in this complaint."  Id., ¶ 200.

16         **a.**    **NCG's Administration Of The BCDPs Involved Issues Under**
17             **Consideration Or Review By Official Bodies Or Proceedings**
18             **Authorized By Law**

19     There can be no dispute that the BCDP is an official proceeding expressly authorized by
20 law.  Indeed, the BCDA expressly authorizes the BCDP.  Cal. Pen. Code, §§ 1001.60 et seq.
21 Plaintiffs admit this is true in the paragraph 38 of the FAC, "In California, 'bad check diversion
22 programs' are based on statutes which specifically define and govern these programs."  Thus, as
23 Plaintiffs concede, NCG's communications to the bad check offenders were made in connection
24 with issues under consideration or review by official bodies or proceedings authorized by law.
25 Cal. Code Civ. Proc., § 425.16(e)(1), (2); see also Briggs v. Eden Council for Hope &
26 Opportunity, 19 Cal.4th 1106, 1115 (1999) (statements by non-profit tenant counseling
27 corporation while assisting tenant with complaint to HUD and small claims court action made in
28 connection with issues under consideration or review by official bodies or proceedings and

therefore protected by Section 425.16).

### b. NCG's Communications Are Protected By The Litigation Privilege And Therefore Also Fall Within Section 425.16

Statements protected by the Litigation Privilege, such as prelawsuit demands, are "equally entitled to the benefits of section 425.16." Briggs, 19 Cal.4th at 1115. California courts look to the Litigation Privilege "as an aid" in determining whether a given communication falls within the ambit of Section 425.16(e)(1) and (2). Flatley v. Mauro, 39 Cal.4th 299, 323 (2006). California courts have adopted a "fairly expansive view" of litigation-related conduct to which Section 425.16 applies. Kashian v. Harriman, 98 Cal.App.4th 892, 908 (2002).

Civil Code section 47(b) provides an absolute privilege to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action. Cal. Civ. Code, § 47(b); Silberg v. Anderson, 50 Cal.3d 205, 212 (1990). The law is well settled that communications that bear "some relation" to an anticipated lawsuit fall within the privilege. Blanchard v. DIRECTV, Inc., 123 Cal.App.4th 903, 919 (2004). The privilege has also been broadly applied to demand letters and other prelitigation communications. Id.

NCG's communications to the bad check offenders on behalf of the District Attorney in connection with the BCDPs are subject to the Litigation Privilege and fall within the protections of Section 425.16 for the following reasons:

*First,* NCG's communications were made in judicial or quasi-judicial proceedings. It is undisputed that its communications were made in connection with the BCDPs. The BCDA expressly authorizes the BCDPs. Cal. Pen. Code, §§ 1001.60 et seq. Therefore, NCG's communications were made in an official proceeding authorized by law. Additionally, Plaintiffs admit in the FAC that one of the purposes of the BCDP is provide bad check offenders with an opportunity to avoid criminal prosecution. See FAC, ¶ 44; see also Cal. Pen. Code, § 1001.60 (the BCDP is a pre-complaint program). Therefore, all of NCG's communications to the bad check offenders in connection with the BCDPs also constitute prelitigation communications and/or demand letters.

  ***Second,*** the BCDA expressly authorizes District Attorneys to contract with private entities such as NCG for the administration of the BCDPs.  Cal. Pen. Code, § 1001.60.  All of NCG's communications with the bad check offenders are approved, authorized by, and sent on behalf of the District Attorney.  Fox Decl., ¶ 8; Ramos Decl., ¶ 8; Wilhelms Decl., ¶ 11.  Therefore, NCG is a participant in the District Attorneys' BCDP authorized by law.

  ***Third,*** NCG's communications with the bad check offenders on behalf of the District Attorneys were made to achieve the objectives of the BCDPs.  One of the objectives of the District Attorneys' BCDPs is to give bad check offenders an opportunity to avoid prosecution by making full restitution to bad check victims and participating in educational classes.  Certainly, NCG's communications to bad check offenders on behalf of the District Attorneys were designed to achieve these objectives.

  ***Fourth,*** NCG's communications were clearly connected and logically related to the BCDPs.  As Plaintiffs admit, all of NCG's communications to the bad check offenders referenced the BCDP, its requirements, the amount of restitution required from the bad check offender, and the potential for criminal prosecution.  FAC, ¶ 72 (alleging the first communication sent by NCG to the bad check offenders indicated that "unless the persons receiving the communications comply with the purported requirements of the so-called 'bad check diversion program,' including, most importantly, the payment of unlawful fees, they are likely to face criminal prosecution."); ¶ 77 (alleging if the bad Check Writer fails to respond to the first communication from NCG, follow up communications are sent "conveying the same false and deceptive threats, i.e., that the recipient will face criminal proceedings if they do not fully comply with the terms of the check diversion program, including payment of all demanded fees.").  Thus, Plaintiffs' own allegations show that NCG's communications on behalf of the District Attorneys were connected and logically related to the BCDPs and potential prosecution.

       1)  **NCG's Communications Were In Connection With Proposed Litigation Contemplated In Good Faith And Under Serious Consideration**

  Based on the allegations of the FAC, NCG anticipates Plaintiffs will argue that NCG's

1   communications are not privileged allegedly because potential prosecution of the bad check
2   offenders had not been seriously considered in good faith when the communications were sent.
3   Such argument should be rejected.
4       A prelitigation statement is protected by the Litigation Privilege when it is made in
5   connection with proposed litigation contemplated in good faith and under serious consideration.
6   Blanchard, 123 Cal.App.4th at 919.  The good faith, serious consideration of litigation test is
7   "addressed to the requirement the statements 'have some connection or logical relation to the
8   action.  Thus, if the statement is made with a good faith belief in a legally viable claim and in
9   serious contemplation of litigation, then the statement is sufficiently connected to litigation and
10  will be protected by the litigation privilege.  If it applies, the privilege is absolute." Id.
11      The Blanchard decision is on point.  The facts in Blanchard involved a class action
12  against DIRECTV for unfair business practices, civil rights violations, extortion, and duress
13  arising out of demand letters DIRECTV sent to thousands of people who had purchased
14  decryption equipment, stating that the use of illegal signal-theft equipment to gain access to
15  DIRECTV's programming violated federal law, seeking cooperation of the letter recipients to
16  stop the pirating, and providing the recipients an opportunity to resolve the matter by way of
17  settlement before commencement of suit.  Thereafter, DIRECTV filed federal lawsuits
18  nationwide against more than 600 people who purchased the pirating devices.  Id. at 910.
19      Plaintiffs alleged that the demand letters were unlawful because (1) DIRECTV had sent
20  them to every name on the customer lists without first ascertaining whether the recipients
21  actually possessed the decryption hardware or used it in some improper fashion; (2) the purpose
22  of the demand letters was to intimidate and coerce the recipients into forfeiting the equipment
23  and to extort money; and (3) they were false, misleading, or deceptive because they repeatedly
24  stated that unless the recipient settled, DIRECTV would seek monetary damages and "the
25  recipient could face civil and criminal prosecution." Id. at 910-911.
26      The trial court granted DIRECTV's anti-SLAPP motion finding that the letters were in
27  furtherance of DIRECTV's right of petition and were absolutely privileged under Civil Code
28  section 47(b).  Id. at 912.  On appeal, plaintiffs argued the Litigation Privilege did not apply

1 because DIRECTV knew it could never possibly sue all the letter recipients based on (1) the
2 sheer number of demand letters sent, (2) the fact that four of the named plaintiffs who refused to
3 settle had not been sued, and (3) the fact that DIRECTV sued only about 5% of the letter
4 recipients. Therefore, according to plaintiffs, an inference was raised that DIRECTV had not
5 sent the demand letter in serious contemplation of litigation. <u>Id.</u> at 920. The California Court of
6 Appeal rejected plaintiffs' argument, holding that:

> "Access to the courts is not an end in itself but only one means to achieve satisfaction ... If this can be done without resort to the courts – even without the filing of a lawsuit – it is incumbent upon the attorney to pursue such a course of action first [typically by a demand letter] ... To hold that DIRECTV must sue every recipient to invoke the privilege would defeat a purpose of the demand letter, namely to avoid litigation."

<u>Id.</u> at 920.

Here, the District Attorneys establish the eligibility for the BCDP. Fox Decl., ¶ 6; Ramos Decl., ¶ 6; Wilhelms Decl., ¶ 8. NCG has no discretion as to who should or should not participate in the program. Fox Decl., ¶ 6; Ramos Decl., ¶ 6; Wilhelms Decl., ¶ 8. Based on the eligibility criteria, all victims were required to present evidence of facts showing probable cause that there had been a violation of Penal Code section 476a. Fox Decl., ¶ 7; Ramos Decl., ¶ 7; Wilhelms Decl., ¶ 8; <u>see also</u> <u>Morris v. Moore</u>, 61 Cal.App.314, 318-319 (1923) (a victim of a bad check crime can establish probable cause of a Penal Code section 476a violation). In fact, ***each and every case referred to the BCDP was a case eligible for prosecution***. Fox Decl., ¶¶ 6-7; Ramos Decl., ¶¶ 6-7; Totten Decl., ¶ 8. Thus, contrary to Plaintiffs' allegations, probable cause had been established before NCG communicated with the bad check offenders on behalf of the District Attorneys in connection with the BCDPs.

Additionally, Section 1001.63 of the BCDA expressly requires that on referral of a bad check case to the BCDP, the notice given to bad check offenders *must* state the penalty for issuance of a bad check, <u>i.e.</u>, criminal prosecution and punishment of up to one year in state prison or county jail. Cal. Pen. Code, § 1001.63(d); <u>see also</u> Wilhelms Decl., ¶ 12. In other words, the BCDA expressly requires that NCG's communications to bad check offenders on behalf of the District Attorneys state that the bad check offenders are subject to criminal

prosecution.  To strip NCG's communications of the protections of the Litigation Privilege for simply complying with BCDA would completely eviscerate the BCDA and the District Attorneys' BCDPs.

Moreover, each bad check offender who is offered an opportunity to participate in the BCDP has a legitimate and serious chance of being prosecuted.  Fox Decl., ¶ 8; Ramos Decl., ¶ 8; Totten Decl., ¶ 16.  As demonstrated by Exhibit A to the Declaration of Dianna Marie Valdez, from 1994 through 2004 alone, District Attorneys throughout California filed *more than 30,000 criminal complaints* against bad check offenders.  Many more complaints have been filed since then.[1]  Additionally, from 1997 through 2009, the District Attorney for San Bernardino County filed nearly 700 criminal complaints against bad check offenders.  Ramos Decl., 8, Ex. A.  From 1994 to 2009, the District Attorney for San Mateo County filed 673 criminal complaints against bad check offenders.  Fox Decl., ¶ 8, Ex. A.  The fact that the District Attorneys can and do file criminal complaints against bad check offenders demonstrates that NCG's communications to the bad check offenders on behalf of the District Attorneys were made in good faith, serious consideration of potential prosecution by District Attorneys.

      **B.**    **<u>Plaintiffs Cannot Show A Reasonable Probability Of Prevailing</u>**

Once the defendant meets its burden of establishing that the complaint falls within the anti-SLAPP statute, the burden shifts to the plaintiff to establish a "reasonable probability" that he will prevail at trial.  Section 425.16(b).  To establish a "probability" of prevailing, the plaintiff must show (1) a legally sufficient claim; and (2) that the claim is supported by competent, admissible evidence sufficient to sustain a judgment in the plaintiff's favor.  <u>Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles</u>, 117 Cal.App.4th 1138, 1147 (2004).  As demonstrated below, Plaintiffs cannot meet their burden.

          **i.**    **<u>The Litigation Privilege Bars Plaintiffs' State Law Claims</u>**

The Litigation Privilege is also relevant to the second step in the anti-SLAPP analysis in that it presents a substantive defense that the plaintiff must overcome to demonstrate a probability of prevailing.  <u>Flatley</u>, 39 Cal.4th at 323.  The Litigation Privilege applies to *any*

---

[1] Valdez Decl., ¶ 6, Ex. B, pp. 26, 86-128, 161-164, 167, 261-262, 266, 268, 317; Fox Decl., ¶ 8, Ex. A; Ramos Decl., ¶ 8, Ex. A; Totten Decl., ¶ 16.

communication and to *all torts* other than malicious prosecution. Home Ins. Co. v. Zurich Ins. Co., 96 Cal.App.4th 17, 23 (2002).

Courts have applied the Litigation Privilege as an absolute bar to liability for each of the state law claims alleged by Plaintiffs here. For example, the Litigation Privilege has been applied to claims for unfair business practices [Rubin v. Green, 4 Cal.4th 1187, 1203 (1993)], fraudulent misrepresentation, and negligent misrepresentation. Seltzer v. Barnes, 182 Cal.App.4th 953, 970 (2010).[2] *"Any doubts as to whether the privilege applies is resolved in favor of applying it."* Home Ins. Co., 96 Cal.App.4th at 23 (citation omitted; emphasis added).

As demonstrated, each of Plaintiffs' state law claims is based on NCG's legitimate communications to bad check offenders on behalf of the District Attorneys in connection with the BCDPs. See FAC, ¶¶ 186, 192-193, and 199. As also demonstrated at pages 7-11, NCG's communications meet all the criteria for application of the Litigation Privilege. As a result, each of Plaintiffs' state law claims is absolutely barred by the Litigation Privilege.

### ii. NCG Is Immune From Liability Because The District Attorneys Would Be Entitled To Immunity For The Same Acts

Under California law, *"a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself."* Bradley v. Medical Board, 56 Cal.App.4th 445, 456 (1997) (emphasis added).

In Bradley, the Medical Board of California ("Board") hired private citizens to assist in an investigation of a doctor alleged to have prescribed drugs without a good faith examination. After being charged with unprofessional conduct, the doctor voluntarily surrendered his license and sued the Board, the State of California and numerous individuals, including the private citizens hired for the investigation, for violating federal and state constitutional rights. Id. at 453.

The Bradley court affirmed the trial court's order granting summary judgment to the private citizens on the ground that they were entitled to qualified immunity, holding that private

---

[2] Additionally, in federal cases alleging violations of FDCPA, courts have dismissed pendent state law claims based on the Litigation Privilege. See e.g., Gerber v. Citigroup, Inc., 2009 U.S. Dist. LEXIS 11657, *21-*22 (E.D. Cal. Jan. 29, 2009); Yates v. Allied Internat'l Credit Corp., 578 F.Supp.2d 1251, 1254 (S.D. Cal. 2008).

citizens' conduct was "objectively reasonable" and it would be "*anomalous not to extend the same protection to the private defendants who had no ax to grind with the [doctor] but were merely assisting the Board at its request.*" Id. at 462 (emphasis added).[3]

Under California law, district attorneys engaging in "prosecutorial conduct" are immune from suit. Weiner v. San Diego County, 219 F.3d 1025, 1030-1031 (9th Cir. 2000); Pitts v. County of Kern, 17 Cal.4th 340, 352-362 (1998). This immunity extends to the decision-making process as to whether to prosecute an individual [Weiner, 210 F.3d at 1030-1031], and actions such as establishing policy, training and supervision of staff regarding prosecution. Pitts, 17 Cal.4th at 362-366. Importantly, "a prosecutor's decision to decline to prosecute a particular defendant on condition that [he or she] participate in an alternative program – i.e., a diversion decision – has traditionally been viewed as a subset of the prosecutor's broad charging discretion." Davis v. Municipal Court, 46 Cal.3d 64, 77 (1988). Accordingly, the District Attorneys would be immune from liability for the actions complained of in the FAC.

NCG administered the BCDPs at the request of the District Attorneys pursuant written agreement as authorized by the BCDA. Fox Decl., ¶ 4; Ramos Decl., ¶ 4; Wilhelms Decl., ¶ 3. All of the actions taken by NCG in connection with BCDPs were expressly authorized and approved of by the District Attorneys. Fox Decl., ¶¶ 5-9; Ramos Decl., ¶¶ 5-9; Wilhelms Decl., ¶¶ 5, 6, 8, 11. At all times, NCG was serving as the agent of the District Attorneys. Fox Decl., ¶ 10; Ramos Decl., ¶ 10. Pursuant to the BCDA, the District Attorneys could have handled all aspects of the BCDP internally, if they had chosen to do so. Cal. Pen. Code, § 1001.60; see also Fox Decl., ¶ 10; Ramos Decl., ¶ 10. If they had, they would be completely immune from the liability asserted by Plaintiffs against NCG -- so should NCG.

### iii. NCG Is Not Liable to Plaintiffs Because It Acted In Good Faith

If for some reason the Court finds that NCG is not entitled to immunity for Plaintiffs' state law claims, NCG cannot be liable to Plaintiffs because, at all times, it acted in good faith. Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). "A good faith defense fully

---

[3] Footnote 14 of Bradley states that the Ninth Circuit has refused to grant qualified immunity to private citizens for claims brought under 42 USC § 1983. Bradley, 56 Cal.App.4th 445, n. 14. Here, Plaintiffs do not assert a claim under 42 USC § 1983 and NCG seeks to strike solely the state law claims based upon qualified immunity.

protects defendants who act in good faith and thus provides them with protections similar to qualified immunity." Franklin v. Fox, 2000 U.S. Dist. LEXIS 19651 at *14 (N.D. Cal. Jan. 22, 2001). Application of the good faith defense turns on the defendants' subjective good faith. Id., 2000 U.S. Dist. LEXIS 19651 at *5-*6.

The District Attorneys established the criteria for eligibility in the BCDP and, by so doing, retained complete prosecutorial discretion. Fox Decl., ¶ 6; Ramos Decl., ¶ 6; Wilhelms Decl., ¶ 8. NCG had no discretion as to who should or should not participate, or as to the terms of participation. Fox Decl., ¶ 6; Ramos Decl., ¶ 6; Wilhelms Decl., ¶ 8.

NCG's actions in connection with BCDPs were expressly authorized and approved of by the District Attorneys. Fox Decl., ¶¶ 5, 8, 9; Ramos Decl., ¶¶ 5, 8, 9; Wilhelms Decl., ¶¶ 5, 6, 8, 11. The form and content of all notices sent to bad check offenders by NCG on behalf of the District Attorneys were approved in advance by the District Attorneys. NCG had express permission from the District Attorneys to send such notices on the District Attorney's letterhead because the notices were sent on behalf of the District Attorney. Fox Decl., ¶ 8; Ramos Decl., ¶ 8; Wilhelms Decl., ¶ 11.[4] The fees required of and collected from bad check offenders to participate in the BCDP were also approved in advance by the District Attorneys. Fox Decl., ¶ 9; Ramos Decl., ¶ 9; Wilhelms Decl., ¶ 6. Thus, NCG reasonably believed, in good faith, that all its actions, communications, and compensation were lawful because they had been approved and authorized by the District Attorneys. Wilhelms Decl., ¶ 14.

**C. Code Of Civil Procedure Section 425.17 Does Not Apply To This Action**

Section 425.17(b) provides an exception to anti-SLAPP statute for public interest and class action lawsuits *if* certain, express conditions apply. Cal. Code Civ. Proc., § 425.17. However, "[n]ot all public interest or class actions [are intended to be] automatically exempt from the anti-SLAPP law." Blanchard, 123 Cal.App.4th at 913. In fact, the California Supreme Court has held that Section 425.17(b) applies *only* when the *entire action* is brought in the public interest. If *any* part of the complaint seeks relief to directly benefit the plaintiff, by securing relief greater than or different from that sought on behalf of the general public or the class, the

---

[4] In fact, when the District Attorneys administer the BCDPs internally, they do so in the same manner as NCG. See Declaration of Gregory Totten, ¶¶ 7-13.

1 Section 425.17 exception does not apply.  Club Members for an Honest Election v. Sierra Club,
2 45 Cal.4th 309, 316-320 (2008).  Section 425.17(b) is to be *narrowly* applied.  Id.
3     Count II of the FAC seeks relief under the FDCPA.  FAC, ¶¶ 171-183.  As part of this
4 count, Plaintiffs allege "Pursuant to 15 U.S.C. § 1692k, plaintiffs and the members of [the class]
5 are entitled to actual damages, statutory damages as set forth therein, and reasonable attorneys'
6 fees and costs."  FAC, ¶ 182.  In paragraph 6 of the Prayer for Relief, Plaintiffs seek "Statutory
7 damages pursuant to 15 U.S.C. § 1692k."  Prayer, ¶ 6.
8     Under the FDCPA, named plaintiffs are entitled to up to $1,000 in statutory damages.  15
9 U.S.C. § 1692k(a)(2)(B)(i).  ***These statutory damages are available to the named plaintiffs only***
10 ***and not the entire class.***  Id., see also Hunt v. Check Recovery Systems, Inc., 241 F.R.D. 505,
11 511, n. 3 (N.D. Cal. 2007); Palmer v. Stassinos, 233 F.R.D. 546, n. 6 (N.D. Cal. 2006).  By
12 seeking statutory damages for named-plaintiffs under the FDCPA, Plaintiffs are seeking relief
13 for themselves that is greater than and different from the relief sought the entire class.  As a
14 result, the FAC is not *solely* brought in the public interest and the 425.17(b) exception to the
15 anti-SLAPP statute does not apply.

16 **D.    NCG Is Entitled To Its Attorneys Fees And Costs**

17     Section 425.16(c) provides a mandatory award of attorneys' fees and costs to a defendant
18 prevailing on an anti-SLAPP motion.  Section 425.16(c); Ketchum v. Moses, 24 Cal.4th 1122,
19 1131 (2001); Verizon Delaware, Inc. v. Covad Communications Co., 377 F.3d 1081, 1091 (9th
20 Cir. 2004).  If this Motion is granted, NCG will submit a noticed motion for its fees and costs.

21 **VI.    CONCLUSION**

22     Based on the foregoing, NCG requests that the Court grant this Motion in its entirety,
23 strike Counts III, IV and VI of the FAC, and award NCG its attorneys' fees and costs.

24

25 DATED: April 13, 2010                    FREEDMAN & TAITELMAN, LLP

26

27                          By:    /S/ M. Taitelman
                                MICHAEL A. TAITELMAN
28                          Attorneys for Defendant NATIONAL
                            CORRECTIVE GROUP, INC.