FREEDMAN & TAITELMAN, LLP
MICHAEL A. TAITELMAN (SBN 156254)
mtaitelman@ftllp.com
JACQUELINE C. BROWN (SBN 177970)
jbrown@ftllp.com
JOSHUA G. BLUM (SBN 249082)
jblum@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Tel.: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Defendant NATIONAL CORRECTIVE GROUP, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA SMITH, LOIS ARTZ, ASHLEY HENDERSON, JANA SPERLING, and TONI NEILSON, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEVINE LEICHTMAN CAPITAL PARTNERS, INC., LEVINE LEICHTMAN CAPITAL PARTNERS III, L.P., LEVINE LEICHTMAN CAPITAL PARTNERS III, LLC, MICHAEL SCHRECK, BRETT STOHLTON and NATIONAL CORRECTIVE GROUP, INC. (dba Corrective Solutions),<br><br>Defendants. | Civ. No. 3:10-cv-0010 JSW<br><br>**CLASS ACTION**<br><br>DECLARATION OF JAMES P. FOX IN SUPPORT OF DEFENDANT NATIONAL CORRECTIVE GROUP, INC.'S MOTION TO STRIKE FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 |

I, James P. Fox, declare:

1. I am more than eighteen years old. I have personal knowledge of the facts set forth below and could competently testify to them.

2. I am the District Attorney of the County of San Mateo. I have served in that capacity continuously since January 1983.

3. Under the authority of California Penal Code section 1001.60 *et seq.*, and acting in my official capacity, I established a criminal diversion program for bad check writers. Bad checks are a huge problem in California, including my county. Unfortunately, my office, like many other district attorneys throughout the state, lacks sufficient resources to prosecute all but a small fraction of bad check cases. Prosecution of bad check cases diverts precious resources from prosecution of other significant crimes, and serves to clog an already impacted judicial system. Thus, in the absence of bad check diversion, merchants suffer a greater level of bad check losses, consumers suffer by virtue of higher costs that must be passed on to offset losses, and increased taxes to cover additional costs for law enforcement and prosecution, and the criminal element is allowed to flourish with little threat of legal repercussion.

4. Due to these considerations, I determined to contract out the purely administrative aspects of the bad check diversion program (the "Bad Check Program"), such as mailing out notices, processing payments, and administering the education component contemplated in California Penal Code section 1001.64(a), to a private company which specializes in providing such services. On or around September 13, 2007, I caused the San Mateo District Attorney's Office to enter into a contract entitled Consulting and Administrative Support Services Agreement (the "Services Agreement") with American Corrective Counseling Services, Inc. ("ACCS") to administer the Bad Check Program. Upon expiration of the Services Agreement in place at that time, and through subsequent competitive procurement processes, I chose to continue to partner with ACCS to handle those administrative functions. Since approximately April 2009, I understand the Services Agreement has been administered by National Corrective Group, Inc. ("NCG") as a result of NCG's acquisition of the operating assets of ACCS.

5. Prosecutorial control and supervision over the Bad Check Program began and has remained at all times with the District Attorney's office. ACCS, and now NCG, merely handled administrative functions at the specific direction of the District Attorney's office and pursuant to the specifically negotiated terms of the Service Agreement.

6. My office established strict criteria for eligibility in the Bad Check Program and, by so doing, retained complete prosecutorial discretion. At no time did ACCS or NCG have any discretion as to who should or should not participate, or as to the terms of participation. If a case met the criteria established by the District Attorney's office, then the bad check writer was eligible to voluntarily participate in our pre-complaint diversion program. If the bad check writer did not meet all the criteria, he or she was not eligible for diversion.

7. According to the criteria established for eligibility, all victims are required to present evidence of facts showing probable cause that there had been a Penal Code 476 violation -- the same sort of evidence a prosecutor would rely on to determine whether a case was suitable for criminal prosecution. Absent such evidence, the case was not eligible for the Bad Check Program. Every case referred to the Bad Check Program could have been prosecuted depending on the state of evidence and my office's ability to prove the case beyond a reasonable doubt. But for the successful participation in our Bad Check Program, many of those cases undoubtedly would have been reviewed and/or filed as misdemeanor bad check cases under Penal Code section 476a.

8. The form and content of all notices sent to bad check writers by the District Attorney's office were approved in advance by the District Attorney's office. ACCS and NCG had/have express permission from my office to send such notices on the District Attorney's letterhead because the notices were/are sent on behalf of the District Attorney by its administrator, NCG. The possibility of prosecution of bad check writers is not a false or idle threat. Our office seriously considers whether to prosecute bad check writers who are offered an opportunity to participate in the Bad Check Program but who fail and/or refuse to do so. Although we may decide, for a variety of reasons, not to prosecute all these bad check writers, we can and do prosecute bad check writers. To illustrate, from 1994 to 2005, our office filed 590

criminal complaints against bad check writers for violations of Penal Cose sections 476a and 476a(b). From 2006 through and including 2009, our office filed an additional 83 cases, including 30 in 2009 alone. Attached as Exhibit A to this declaration is a true and correct copy of a letter setting forth the pertinent filings for 2006, 2007, 2008 and 2009. This letter is to supplement the January 23, 2010 letter signed by Assistant District Attorney Stephen M. Wagstaffe attached as pages B-2 0310 through 0311 to the Declaration of Dianna Marie Valdez.

9. The amounts paid by bad check writers to participate in the Bad Check Program were approved in advance by my office and are administered pursuant to the Services Agreement. Likewise, the allocation between the District Attorney's office, ACCS or NCG, and the victim, of monies recovered were all agreed upon in advance between my office and ACCS or NCG and are administered pursuant to the terms set forth in the Services Agreement.

10. In summary, the Bad Check Program is my program, not ACCS's or NCG's program. Pursuant to statute, my office could handle all aspects of the program internally if it chose to do so. Instead, pursuant to the authority granted by California Penal code section 1001.60 *et seq.*, my office chose to utilize ACCS and later NCG as an agent of the District Attorney's office to assist with the management of clerical and administrative functions, including the required educational component. ACCS and NCG have acted as fiduciaries to the District Attorney, and my office had full knowledge of how ACCS and NCG fulfilled their functions in partnership with the District Attorney.

11. Lawsuits like this one are a direct challenge to the important criminal diversion program my office has implemented. Ordering NCG or others like them to cease operating would be tantamount to ordering the District Attorneys to stop operating Bad Check Programs in the manner which has been determined to best meet the needs of counties throughout the State of California and as set forth by the California State Legislature.

/
/
/
/

1  I declare under penalty of perjury under the laws of the United States and the State of
2  California that the foregoing is true and correct.
3  Executed this 6th day of April 2010 at Redwood City, California.

*[signature]*
JAMES P. FOX

# EXHIBIT "A"



# James P. Fox, District Attorney/Public Administrator

STEPHEN M. WAGSTAFFE  ASSISTANT DISTRICT ATTORNEYS
CHIEF CRIMINAL DEPUTY   KAREN GUIDOTTI
                        MORLEY PITT

## COUNTY OF SAN MATEO

400 COUNTY CENTER, 3RD FLOOR • REDWOOD CITY • CALIFORNIA 94063
PUBLIC ADMINISTRATOR   (650) 363-4475 • DISTRICT ATTORNEY   (650) 363-4636

January 23, 2010

Grover C. Trask
Best, Best & Krieger, LLP
3750 University Avenue, Suite 400
Post Office Box 1028
Riverside, California 92502-1028
FAX (961) 686-3083

RE: Public Record Request For Information Re: Penal Code Section 476a Filing Statistics

Dear Mr. Trask:

At the request of District Attorney James P. Fox, we have conducted the necessary records search to provide you with the requested information. The specific request was for records of all misdemeanor and felony complaint filings for any charges involving 476a Penal Code from 1994 to 2005, including 476a(a) and 476a(b) charges.

The results of our records check, which was conducted by means of a computer statistical run of our filings for the 1994 to 2005 period, are as follows.

Penal Code section 476a(a) felony filings: 235 cases

Penal Code section 476a(b) felony filings: 2 cases

Penal Code section 476a(a) misdemeanor filings: 326 cases

Penal Code section 476a(b) misdemeanor filings: 27 cases

Please feel free to contact us if additional information would be of assistance.

**Valdez Exhibit B-2 - 0310**

EXHIBIT ___A___

Very truly yours,

JAMES P. FOX, DISTRICT ATTORNEY

By _____
    Stephen M. Wagstaffe, Deputy

Cc: James Fox, District Attorney

**Valdez Exhibit B-2 - 0311**