FREEDMAN & TAITELMAN, LLP
MICHAEL A. TAITELMAN (SBN 156254)
mtaitelman@ftllp.com
JACQUELINE C. BROWN (SBN 177970)
jbrown@ftllp.com
JOSHUA G. BLUM (SBN 249082)
jblum@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Tel.: (310) 201-0005
Fax: (310) 201-0045

Attorneys for NATIONAL CORRECTIVE GROUP, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA SMITH, LOIS ARTZ, ASHLEY HENDERSON and JANA SPERLING, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEVINE LEICHTMAN CAPITAL PARTNERS, INC., LEVINE LEICHTMAN CAPITAL PARTNERS III, LP., LEVINE LEICHTMAN CAPITAL PARTNERS III,: LLC, MICHAEL SCHRECK, BRETT STOHLTON and NATIONAL CORRECTIVE GROUP, INC (dba "Corrective Solutions),<br><br>Defendants. | Civ. No. 3:10-0010 JSW<br><br>CLASS ACTION<br><br>[Assigned to the Honorable Jeffery S. White]<br><br>NATIONAL CORRECTIVE GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT<br><br>Date: June 18, 2010<br>Time: 9:00 a.m.<br>Courtroom: 11 |

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant National Corrective Group, Inc. ("NCG") hereby submits the following Reply Memorandum of Points and Authorities in further support of its Motion to Dismiss ("Motion") Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## I.  INTRODUCTION

Plaintiffs have failed to satisfy their basic pleading requirements. Plaintiffs' opposition to the Motion demonstrates that they cannot allege a claim against NCG for violating the Fair Debt Collection Practices Act ("FDCPA") or any of the alleged State law claims. As set forth fully below, NCG's Motion should be granted because: (1) The FDCPA does not apply to criminal bad checks nor is NCG a debt collector; (2) all of NCG's actions are expressly authorized by the District Attorneys—who have not complained of NCG's conduct; and (3) NCG has qualified immunity and therefore the State law claims fail.

**First**: Plaintiffs devote a majority of their opposition to mischaracterizing the law to support their misguided belief that efforts to recover criminal restitution by State District Attorneys are subject to the FDCPA. Plaintiffs have intentionally blurred the distinction between a civil bad check, including civil bad checks that arise from fraudulent conduct (both of which are subject to the FDCPA), and a criminal bad check. The demarcation between the two separate and distinct legal concepts however is clear.

A civil debt, even one arising from fraudulent conduct, is still an obligation owed by the issuer of the check directly to the merchant and subject to the FDCPA. An action to collect on this debt would be pursued by the merchant against the bad check writer and the recovery thereon would inure to the aggrieved merchant. (Code Civ. Proc., §30). In stark contrast, a "criminal action is prosecuted in the name of the people of the State of California, as a party, against the person charged with the offense." (Pen. Code, § 684.) *People v. Superior Court (Laff)*, 25 Cal. 4th 703, 723 (2001). Further, criminal restitution is imposed not because victims have an independent legal entitlement to it, but "as a means of achieving penal objectives such as deterrence, rehabilitation, or retribution." *United States v. Cloud*, 872 F. 2d. 846, 854 (9th Cir. 1989). Although restitution paid to the merchant after recovery from the

District Attorney may approximate the loss on the victim's check, the context in which it arises—the criminal justice system—mandates a different conclusion. *See Kelly v. Robinson*, 479 U.S. 36, 52 (1986).

A bounced check, even one arising out of fraudulent conduct, which is pursued through ordinary debt collection processes (and which is subject to the FDCPA) is a civil bad check (hereinafter a "Civil Bad Check"). A criminal bad check however is demonstrably different. A criminal bad check is one in which: (1) the victim has filed a criminal complaint with the District Attorney; and (2) the victim has relinquished his/her right to recover their losses directly (hereinafter a "Criminal Bad Check"). The FDCPA does not apply to Criminal Bad Checks. A Criminal Bad Check is a criminal justice matter, the prosecution of which belongs to the District Attorney.

**Second**: Plaintiffs completely ignore the fact that *all of NCG's actions were expressly authorized by the District Attorney*. The contract which Plaintiffs attached to their FAC ***requires***, among other things, that: (1) the Bad Check Diversion Program ("BCDP") operate *under* the District Attorney's name, authority and control. (See Exhibit A to FAC Recitals Section (v)); (2) the *format, content, and frequency* of any oral or written communications with Participants concerning the payment of restitution or Diversion Seminar Fees be approved ***in advance*** by the District Attorney (*Id.* at Recitals, Section (v)(e)); and (3) NCG's employees, when performing the administrative support requirements of the agreement, be subject to the managerial control of the District Attorney at all times with respect to any communications NCG's employees may have with Participants. (*Id.* at Section 13, "Status of ACCS Personnel").

Given that all conduct Plaintiffs now complain of has been authorized by the criminal enforcement agent for the State (i.e. the respective District Attorney), any claim that NCG has not complied with the Bad Check Diversion Act, Penal Code section 1001.60 et seq. ("BCDA") should be expressly rejected by this Court. Pointedly, Plaintiffs utterly fail to allege that even a ***single*** District Attorney has complained of, or otherwise disapproved of, NCG's conduct in administering the BCDPs. The reason Plaintiffs failed to make this allegation is because no facts exist to support it. The truth is, other than civil class action plaintiffs' attorneys—such as Plaintiffs' counsel here—there has been no displeasure with the BCDA or with the administering of the BCDP by private entities such as NCG.

**Third**: Plaintiffs misapprehended NCG's qualified immunity argument. NCG asserts that the *state law claims* against it cannot proceed as a matter of law because NCG enjoys qualified immunity. NCG has not argued that the federal claim is subject to qualified immunity. As discussed below, the State law claims alleged in the FAC must be dismissed because of qualified immunity.

Accordingly, Plaintiffs' opposition fails to establish their right to proceed with this action against NCG. Thus, NCG respectfully requests that its Motion be granted in its entirety.

## II. ARGUMENT

### A. NCG IS NOT A "DEBT COLLECTOR" AND CRIMINAL RESTITUTION IS NOT A "DEBT" UNDER THE FDCPA.

#### i. Plaintiffs' Authority Fails to Demonstrate that NCG is Subject to the FDCPA.

Plaintiffs cite numerous cases in their attempt to misrepresent that providers of BCDPs, such as NCG, are debt collectors and that they are collecting a "debt" under the FDCPA. However, none of the cases Plaintiffs cite are on point.

**First**: Plaintiffs rely on *Gradisher v. Check Enforcement Unit*, 133 F. Supp. 2d 988 (W.D. Mich. 2001) to support their claim that BCDP providers such as NCG are debt collectors subject to the FDCPA. However, *Gradisher* is not on point because it did not involve Criminal Bad Checks. The defendant in *Gradisher* admitted that the first letter it sent to the check writer, entitled "Due Process Notice" was sent ***prior*** to the finding of probable cause that a crime had been committed. *Id.* at 989. In fact, the defendant in *Gradisher* admitted that they sent the first letter to the check writer in order to ***establish*** probable cause. *Id.* The first letter written was simply a civil collection letter. Moreover, the defendant in *Gradisher* also required that the merchant pay an $85 fee directly to the defendant to participate in the defendant's program. *Id.* Additionally, the program was not under the direction or supervision of the District Attorney of that county. *Id.*

Here, as acknowledged in the FAC and demonstrated by the contract attached to the FAC, the victims file a crime report with the District Attorney and relinquishes their rights to collect on the debt. Additionally, there has been a finding of probable cause that the suspect has violated Penal Code section 476a prior to offering the BCDP. Moreover, NCG does not contract with the merchant and does not

1  receive any money from the merchant. Plaintiffs' citation to *Gradisher* demonstrates a lack of understanding about the nature of Criminal Bad Checks.

**Second:** Plaintiffs incorrectly cite *Bass v. Stolper, Koritzinsky, Brewster, & Neider*, 111 F. 3d 1322 (7th Cir. 1997) to support their claim that Criminal Bad Checks that have been turned over to the District Attorney are considered debts under the FDCPA. However, *Bass* never made that determination, nor was this issue before the *Bass* Court. The defendant in *Bass* was attempting solely to collect a Civil Bad Check. *Id.* at 1323. The defendant did not report the alleged criminal conduct to the authorities nor did the defendant relinquish their right to collect on the civil debt. While the defendant in *Bass* did claim as "almost as a second thought" that the plaintiff's actions in passing a bad check violated Wisconsin's criminal statute (*Id.* at 1329), the court found that defendant failed to provide evidence to support this claim. *Id.* Again, the facts of this case are inapplicable to this action. *Bass* is not a case about criminal restitution recovered under State law bad check diversion programs.

**Third:** Plaintiffs misrepresent the holding in *Del Campo v. ACCS, Inc.* 491 F. Supp. 2d 891, 902-903 (N.D. Cal. 2006). Plaintiffs fail to explain that the Court did not examine any evidence in making its ruling that ACCS was subject to the FDCPA. Rather, the Court merely denied ACCS's motion to dismiss the FDCPA claim. There were no findings of fact or conclusions of law to support the Court's ruling. *See Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) (A motion to dismiss for failure to state a claim tests only whether the pleadings are sufficient, not whether the plaintiff could find evidence to support them.). Additionally, *Del Campo v. Kennedy*, 517 F. 3d 1070 (9th Cir. 2008) suffers from the same misrepresentation. The Ninth Circuit did not rule on the issue of whether ACCS was subject to the FDCPA. Rather, it ruled on the limited and narrow issue of whether State sovereign immunity shields a private entity working under contract with a State actor from federal suit. Here, NCG has not argued that sovereign immunity applies and therefore this holding is irrelevant.

Thus, while Plaintiffs may claim that an "unbroken line of federal courts" (Opp. 2:2-3) have confronted the issue of whether private BCDP providers, like NCG, are subject to the FDCPA, the truth is that there is no authority whatsoever to support such a claim[1].

---

[1] Plaintiffs' reliance on *Schwarm v. Craighead*, 552 F. Supp. 2d 1056 (E.D. Cal. 2008) is misplaced. Defendant Craighead, the only defendant opposing the motion for summary judgment, was not represented by counsel throughout the proceeding (whereas plaintiffs were represented by FDCPA class action lawyers including the *same* lawyer representing Plaintiffs in this action). Additionally, while Craighead attempted to defend the action, he did not have the requisite

### ii. A Criminal Bad Check is Not Subject to the FDCPA.

A Criminal Bad Check is not tendered *for payment*. Instead, it is used as a means to commit a crime—similar to the use of a forged contract or counterfeit money in the operation of a crime. Put another way, Criminal Bad Checks are issued to obtain goods or services *without payment*.

Accepting Plaintiffs' argument that the FDCPA applies to criminal violations (which it does not) creates an absurd result. By filing a criminal report with the applicable authorities, and thus relinquishing the victim's right to collect on the obligation, the FDCPA does not apply to the behaviors that fall within the statutory definition of Penal Code section 476a. *See Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1086 (9th Cir. 2000) ("Once the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness."); *Cloud*, 872 F. 2d. at 854 (Moreover, because restitution is an obligation to the State, the victim has no legal entitlement to it, cannot independently enforce it, and has no control over its issuance.); *United States v. Bearden*, 274 F.3d 1031, 1040-41 (6th Cir. 2001) (Consequently, release and settlement agreement between victim and wrongdoer does not preclude district court from issuing restitution order for same underlying wrong).

In accord with the foregoing, the Court in *Jaime Taie v. Kevin Osterberger, Inc., et al.*, Case No. CV-04-0116-FVS, Order Re: Motions for Summary Judgment and Motion to Dismiss, (E.D. WA Oct. 12, 2004)(PACER) (Ex. A, Request for Judicial Notice)[2] held that, in recognition of the fundamental policy against federal interference with the exercise of state powers in criminal prosecutions, a similar BCDP provider, BounceBack, Inc. ("BounceBack") was exempt from the automatic bankruptcy stay under 11 U.S.C. §362(b)(1) in administering the Spokane County BCDP. *Taie,* Case No. CV-04-0116-

---

knowledge or expertise to properly mount a defense. In fact, as the court explained, Craighead did not even "oppose plaintiffs' Statement of Undisputed Facts or provide a separate statement …" in support of his opposition to the motion for summary judgment. *Id.* at 1063 fn. 1. Additionally, the Court admonished plaintiffs' counsel in *Schwarm*, including Paul Arons—lead trial counsel here—for failing to cite three adverse rulings that were directly on point. In discussing the omissions by plaintiffs' counsel the court stated "[e]ven more disturbing to the court than this omission is the fact that, of plaintiffs' five counsel in this case, four of the attorneys were counsel for the plaintiffs in one or more of the three aforementioned cases. ***Plaintiffs' counsel's conscious decision not address, let alone cite, the only cases directly on point shocks the conscience of this court."*** *Id.* at 1084 fn 22 (emphasis added). Due to the improper conduct of plaintiffs' counsel and defendant's lack of any legal representation, the *Schwarm* Court was not apprised of all legal issues and defenses that could have been set forth. Put simply, *Schwarm* is an anomaly and should be disregarded by this Court.

[2] On January 11, 2005, the United States District Court for the Eastern District of Washington ordered this ruling published. (See Exhibit B to Request for Judicial Notice). For ease of reference, NCG attaches a copy of this opinion as Exhibit A to its Request for Judicial Notice.

FVS. at *16. The plaintiffs in *Taie* were referred to the Spokane County BCDP operated by BounceBack. The plaintiffs received notices from BounceBack after they filed bankruptcy, offering them participation in the Spokane County BCDP, which included participating in required educational training and paying restitution to the victim. *Id.* at *2-3. Plaintiffs claimed that sending the letters after they filed for bankruptcy violated the automatic stay provisions of 11 U.S.C. §362(a)(1)(6). *Id.* at *3. Plaintiffs acknowledged that there was an exemption to the automatic for the "commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. §362(b)(1). *Id.* at *8. Plaintiffs argued that the plain meaning of "criminal proceeding" and "criminal action" did not include the Spokane County BCDP. The *Taie* Court rejected this argument and held that the Spokane County BCDP was exempt from the automatic stay provisions under the Bankruptcy Code. Likewise, here, the Court should find that NCG's operation of the BCDP falls outside of the purview of the FDCPA.

The FDCPA is a consumer protection statute. It is not intended to protect criminals *accused* of violating criminal statutes. Arguably, where a victim of a bad check writer does not file a criminal report, but simply attempts to collect the debt, the collection activities could be subject to the FDCPA—even if the bad check writer intended to defraud the victim. *See Bass,* 111 F. 3d at 1330.

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. [T]his broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Gruntz*, 202 F.3d at 1086 (citations omitted) the same holds true for a District Attorney's decision to allow diversion in lieu of prosecution. Here, the suspect accused of violating Penal Code section 476a has refused repeated pleas by the victim to pay the monies he or she owes. The victim thereafter files a crime report with the applicable authorities, i.e. the District Attorney. Upon receipt of the crime report, and upon a determination that probable cause exists that a crime has been committed, the District Attorney takes action. Often, they offer the BCDP to the suspect. This is not debt collection, it is a criminal justice matter. ***This is the clear distinction that Plaintiffs either cannot, or will not accept.***

**B      NCG'S ACTIONS WERE EXPRESSLY AUTHORIZED BY THE DISTRICT ATTORNEY AND THEREFORE NCG HAS NOT ACTED CONTRARY TO LAW.**

Plaintiffs have not alleged that the District Attorneys are dissatisfied with NCG or that the District Attorney, who is the party to the contract, claims that NCG breached the contract. There is no evidence to support such a claim. The actions undertaken by NCG were expressly approved of, and authorized by, the District Attorney. It is the District Attorney who retains full prosecutorial discretion. FAC Exhibit A Recital V (a). It is the District Attorney who determines whether there is probable cause that a crime exists. *Id.* at V(c). Additionally, it is the District Attorney who approved in advance the format and content of the communications with the suspects. *Id.* V (e). Put simply, all actions Plaintiffs now claim violate the FDCPA are the precise actions that the District Attorney authorized and approved under the BCDA. Therefore, Plaintiffs real complaint is not with NCG; rather their real issue is with the BCDA and the manner in which the District Attorneys have chosen to administer their respective BCDPs.

Moreover, Plaintiffs do not allege that NCG is charging any fees that are not authorized in the BCDA or in the contracts with the District Attorneys. The District Attorney authorizes the fees to be charged in his/her jurisdiction; thus such fees are authorized. To the extent Plaintiffs disagree with the fees the District Attorney elects to charge, they should seek appropriate redress from the District Attorney—not NCG who simply administers the BCDP. Moreover, Plaintiffs claim that the letters sent under the BCDP should be prohibited from threatening prosecution is simply non-sensical. Opp., 4: fn2. While certainly a civil debt collector may be prohibited from making baseless threats of criminal prosecution, the District Attorney has the authority (if not the obligation) to make such disclosures. To deny the District Attorneys this right and duty would be to infringe on their police powers. There is simply no basis to do so.

Plaintiffs further claim that NCG should be required to represent in communications that it is a debt collector. Opp., 11: 11-13. First, NCG cannot disclose its identity because it is acting under the specific direction of the District Attorney. NCG is simply its agent; it has no power to act independently of the District Attorney. Second, it would be patently improper, contrary to the contracts with the District Attorneys, and a misrepresentation, for NCG to state that the communication was sent from a debt collector. The communication was sent from the District Attorney who most assuredly could not be characterized as a debt collector.

Finally, NCG recognizes that the Supremacy Clause of the United States Constitution supports the notion that the FDCPA governs debt collection and preempts contrary state law. However, it is a misapplication of the Supremacy Clause for Plaintiffs to assert that it would preempt how States enforce their police powers. These are two separate and entirely distinct areas of law, which the Supremacy Clause simply has no application. *See* U.S. Const. Amend. 10 ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."); *Kelly,* 479 U.S. at 47, 49 (1986) ("[T]he right to formulate and enforce penal sanctions is perhaps the most important aspect of State sovereignty, and there is a fundamental policy against federal interference with 'States' interests in administering their criminal justice systems.")

### C. NCG HAS QUALIFIED IMMUNITY AS TO PLAINTIFFS' STATE LAW CLAIMS.

Plaintiffs assert that, *under federal law*, private actors are not entitled to qualified immunity under 42 U.S.C. § 1983 based on the premise that NCG purportedly contends "it should avoid suit altogether under the doctrine of qualified immunity." Opp., 13:25-26. Plaintiffs' premise is demonstrably false. NCG contends, pursuant to the holding in *Bradley v. Medical Board*, 56 Cal.App.4th 445 (1997), it is entitled to qualified immunity for Plaintiffs' **state law claims**. Motion, 16, 18:16-17. Contrary to Plaintiffs' assertion, NCG did not assert, in any way, that it was immune from "suit altogether." Therefore, Plaintiffs' argument that qualified immunity does not apply to the FDCPA is simply irrelevant. Moreover, despite Plaintiffs' mischaracterization of NCG's argument and their misplaced reliance on cases involving 42 U.S.C. § 1983 cases, California law provides immunity to NCG for Plaintiffs' state law claims.

As held by the court in *Bradley,* under California law, ***"a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself."*** *Bradley,* 56 Cal.App.4th at 456 (emphasis added).

Additionally, under California law, district attorneys engaging in "prosecutorial conduct" are immune from suit. *Weiner v. San Diego County*, 219 F.3d 1025, 1030-1031 (9th Cir. 2000); *Pitts v. County of Kern*, 17 Cal.4th 340, 352-362 (1998). This immunity extends to the decision-making

process as to whether to prosecute an individual [*Weiner*, 210 F.3d at 1030-1031], and actions such as establishing policy, training and supervision of staff regarding prosecution. *Pitts*, 17 Cal.4th at 362-366. Importantly, "a prosecutor's decision to decline to prosecute a particular defendant on condition that [he or she] participate in an alternative program – i.e., a diversion decision – has traditionally been viewed as a subset of the prosecutor's broad charging discretion." *Davis v. Municipal Court*, 46 Cal.3d 64, 77 (1988). Accordingly, the District Attorneys would be immune from liability for the actions complained of in the FAC.

By selectively quoting portions of the district court's decision in *Del Campo*, 491 F.Supp.2d at 900, Plaintiffs assert that the District Attorneys would not have immunity with regard to their decisions to contract with NCG for the administration of the BCDPs. *See* Opp. 16:22-17:3. Plaintiffs, however, conveniently omit the portion of the *Del Campo* decision that expressly held "the District Attorney would have immunity for decisions regarding who is eligible for the diversion program." *Del Campo*, 491 F.Supp.2d at 900, citing *Davis*, 46 Cal.3d at 77.

A key component of each of Plaintiffs' state law claims is that the BCDPs are limited to individuals for whom the District Attorney has determined probable cause of a violation of Penal Code section 476(a) exists. *See* FAC, ¶¶ 186 (unfair business practices), 192 (fraud), 199-200 (negligent misrepresentation). Plaintiffs allege that no probable cause determination had been made prior to NCG communicating with the bad check offenders on behalf of the District Attorneys. *Id.*, ¶¶ 61-62, 186. 192, 199-200. Plaintiffs further seek to hold NCG liable for various state law torts based on its determination of which bad check offenders should be contacted in connection with the BCDPs. In other words, Plaintiffs seek to hold NCG liable for allegedly determining who was eligible for the BCDPs. Based on well-settled law, the District Attorneys would have immunity for such decisions. Because the District Attorneys are the ones with the sole discretion to determine eligibility for the BCDP, NCG is immune from suit relating to those District Attorney determinations. *Davis,* 46 Cal.3d 64. Thus, Plaintiffs' State law claims must be dismissed.

### III. CONCLUSION

Based upon the foregoing, NCG respectfully requests that the Court grant its Motion and dismiss the FAC in its entirety.

| | |
|---|---|
| DATED: April 23, 2010 | By: /s/Michael A. Taitelman<br>Michael A. Taitelman<br>FREEDMAN & TAITELMAN, LLP<br>1901 Avenue of the Stars, Suite 500<br>Los Angeles, CA 90067<br>Tel: (310) 201-0005<br>Fax: (310) 201-0045<br>mtaitelman@ftllp.com<br><br>Attorneys for National Corrective Group, Inc. |

NATIONAL CORRECTIVE GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT
Civ. No. 3:10-0010 JSW