# CONSULTING
# AND
# ADMINISTRATIVE SUPPORT SERVICES
# AGREEMENT

This Consulting and Administrative Support Services Agreement (the "Agreement") between American Corrective Counseling Services, Inc., a California corporation ("ACCS") and the District Attorney of San Mateo County, State of California ("District Attorney"):

## Recitals

(i) The District Attorney and ACCS have expressed interest in entering into this Agreement on the terms contained herein, and such terms shall remain valid and in effect for thirty (30) days from the date of execution by ACCS ("Courtesy Period") and will expire at that point should the Agreement not be jointly executed by the parties within the Courtesy Period.

(ii) The principal business activity of ACCS is the provision of educational seminars, consulting, and administrative support services to State and Judicial District prosecutors' offices that have adopted a bad check diversion program. These programs typically allow alleged bad check offenders (the "Participants") to avoid the prospect of criminal prosecution, provided the Participant attends an educational seminar ("Seminar") mandated by the prosecutorial authority addressing the causes and the prevention of bad check writing, in addition, each Participant must pay a mandatory fee for the Seminar and full restitution to the victim of the bad check. For purposes of this Agreement a check shall be defined as any physical or electronic account draft or as per the Check Clearing for 21st Century Act section 3(6): a draft, payable on demand and drawn on or payable through or at an office of a bank, whether or not negotiable, that is handled for forward collection or return, including a substitute check and a travelers check ("Check").

(iii) ACCS has extensive experience providing consulting, administrative support, and Seminars for diversion programs. More specifically, ACCS has developed proprietary Seminar materials for conducting Seminars, including extensive experience in staffing diversion program Seminars, and has acquired substantial knowledge with respect to the administrative and record management procedures necessary to operate an effective diversion program.

(iv) The District Attorney desires to provide a pretrial diversion program for Participants, consistent with and pursuant to Section 801 of The Financial Services Regulatory Relief Act of 2006, 15 U.S.C. § 1692p ("The Act"), and any applicable state law and desires to retain ACCS to provide consulting services, to staff and to operate its District Attorney diversion program Seminars, and to provide administrative support services as reasonably required by the District

**EXHIBIT 5**

Attorney in conducting its diversion program ("Diversion Program"). ACCS desires to perform these services for the District Attorney as specified herein.

(v) The District Attorney and ACCS acknowledge that the Diversion Program will be operated under the District Attorney's name, authority and control. It is specifically understood that:

(a) the District Attorney retains full prosecutorial discretion and does not delegate to ACCS any aspect of the exercise of prosecutorial discretion and the District Attorney has deemed the Diversion Program to be in the best interest of its jurisdiction and in compliance with any applicable state statutory or common law and in compliance with The Act;

(b) the content and frequency of the Seminars are to be approved by the District Attorney prior to the commencement of the Seminars;

(c) prerequisites for participation in the Diversion Program, including any requirement to pay full restitution to the victim, shall be established by the District Attorney and not by ACCS. The District Attorney shall determine if probable cause of a bad check violation exists under state penal law ("Bad Check Violation") and that contact with the alleged offender for purposes of participation in the Diversion Program is appropriate and consistent with The Act, as so required. This determination by the District Attorney shall be communicated to the Diversion Program via its authorized and approved intake, dispute resolution, and prosecution review criteria established prior to the start of the Diversion Program and as these and other future required documents, as needed, may be added or updated from time to time by the District Attorney;

(d) the District Attorney retains the authority to contractually set or modify the Diversion Seminar fees and terms of payment from the Participants;

(e) the format, content, and frequency of any oral or written communication with Participants concerning the payment of restitution or Diversion Seminar Fees is to be approved in advance by the District Attorney, along with any future changes of material consequence to the communications materials;

(f) the mailing of all written communications to Participants concerning the payment of restitution or Diversion Seminar Fees is to be approved by the District Attorney prior to the mailing, and any such written communication will be either generated or mailed by District Attorney personnel, by a mailing service or similar clerical service, or fulfilled by ACCS under its assigned administrative responsibilities per this Agreement; and

(g) the mailing address to which Participants are directed to respond will be the District Attorney's mailing address and/or a post office box held in the District Attorney's name.

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

**EXHIBIT 5**

San Mateo County, CA
Page 4 of 9

    (iii)    open and sort correspondence related to the Diversion Program and deposit restitution payments and Diversion Program Fees in a federally insured account to be held in trust for the District Attorney ("Account"),

    (iv)    prepare monthly reports which shall provide a summary of transactions and Diversion Program activity for the period, and

    (v)    maintain physical files, computer files, and facilities required for performance under this Agreement, and provide the necessary supplies and system access to enable the District Attorney to operate the Diversion Program.

    **4.**    **Responsibilities of the District Attorney.** The District Attorney shall establish the policies and procedures of the Diversion Program and instruct ACCS regarding the administrative requirements necessary for effective Diversion Program operation. The District Attorney shall establish eligibility criteria for all Participants in the Diversion Program and shall determine if probable cause of a Bad Check Violation exists under state penal law, and that contact with the alleged offender for purposes of participation in the Diversion Program is appropriate and consistent with The Act, as so required. This determination by the District Attorney shall be communicated to the Diversion Program via its authorized and approved intake, dispute resolution, and prosecution review criteria, established prior to the start of the Diversion Program and as these and other future required documents, as needed, may be added or updated from time to time by the District Attorney. The District Attorney shall also determine, consistent with state statutory law if applicable, specific Diversion Program completion criteria, and procedures regarding the management of cases for those individuals who fail to comply with Diversion Program requirements, including the payment of full restitution and Diversion Program Fees.

    **5.**    **Designation of District Attorney's "Communications Liaison Officer."** The District Attorney's office shall designate one of its properly authorized employees as the Communications Liaison Officer (the "Communications Officer"). The Communications Officer shall be charged with final approval, signature, and coordination of all written communications to Participants concerning the Diversion Program, except for those communications relating exclusively to conducting and scheduling of Seminars, which is the primary responsibility of ACCS. Furthermore, the Communications Officer shall authorize and supervise all communications with Participants concerning the terms and conditions of the Diversion Program, including directing the dispute process to comply with The Act, as so required, which will include a clear and conspicuous statement in the initial notice informing Participants that they have 30 days to dispute in writing the validity of any alleged Bad Check Violation ("Written Dispute"). The initial notice will also inform Participants of their various approved dispute options and requirements. ACCS shall adhere to the authorized dispute resolution criteria and shall forward any such unresolved Written Disputes to the Communications Officer, who will then provide, per The Act, explicit direction(s) as to how to resolve the dispute and whether such Participant has been further determined eligible for continued participation in the Diversion Program. ACCS shall be responsible for all communications with Participants regarding the conduct and scheduling of the Seminars, including attendance, location, rescheduling of Seminars, or other Seminar related matters. ACCS personnel shall direct any questions within the responsibility of the Communications Officer to the Communications Officer, and not discuss these issues with Participants.

9/12/2007

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

**EXHIBIT 5**

San Mateo County, CA
Page 5 of 9

    6.    **Compensation to ACCS.** ACCS is to be compensated from the proceeds of the Diversion Seminar Fees charged to the Participants, from ACCS' portion of the Administrative Fees (if any), and from Incidental Expense Fees (if any) charged to Participants for monitoring restitution, accounting costs associated with payment arrangements, and any other incidental costs authorized by law or the District Attorney. The authorized Diversion Seminar Fees, Administrative Fees (if any), and Incidental Expense Fees (if any) are set forth on Schedule 1 attached hereto.

    7.    **Funds and Disbursements.** Participants in the Diversion Program shall be instructed to remit payments: i) to a post office box maintained by the District Attorney, ii) over the phone and/or Internet, (e.g., via credit/debit card, ACH or other EFT type transaction), iii) via Western Union (or equivalent service provider), or iv) other payment methods that may be available in the future, after which monies shall be deposited in a federally insured Account. Disbursements from the Account shall be made on a regular cycle with the assistance of ACCS. A summary of all Account transactions shall be reported on a monthly basis, with supporting documentation made available for inspection upon request.

    8.    **Records Subject to Audit.** The Diversion Program books of accounts, records, and source documents shall be kept and made available at the request of the District Attorney with the cost of such presentation borne by ACCS. The District Attorney shall have the right to examine and audit the Diversion Program books and records and supporting source documents at any and all times. The cost of the audit shall be borne by ACCS if the audit shows an understatement of annual gross income of more than five (5) percent of the annual gross income determined on audit, or the audit demonstrates a material failure of ACCS to maintain accurate and complete books, records, accounts, and supporting documentation. All Diversion Program physical and electronic records shall be retained for a period of not less than three (3) years, with records relating to any litigation, or settlement of claims arising out of performance of this contract being retained for a period of not less than four (4) years.

    9.    **Termination.** Either party may terminate this Agreement without cause upon ninety (90) days written notice given to the other party. In the event of a termination, the District Attorney shall give ACCS written "wind down" instructions. ACCS shall comply with the termination instructions in a manner that is consistent with recognized standards of prudent business practice. Compensation to both parties will continue throughout the process of closing operations.

    10.    **Confidentiality.** ACCS acknowledges and agrees to implement reasonable safeguards to protect the confidentiality of information obtained in the course of the Diversion Program, including the identity and personal information of Participants, the identity of persons who file bad check crime reports with the District Attorney, and the operations of the District Attorney. The District Attorney agrees to protect all proprietary information ACCS provides in connection with the performance of this Agreement, including ACCS communications materials, teaching materials, instructional guidelines, financial condition, business plans, customer identities, and technical information. The parties agree upon termination of this Agreement to refrain from using any proprietary or confidential information or materials unless such materials or information may become evidence in any criminal prosecution or civil action that affects San Mateo County of the State of California.

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

**EXHIBIT 5**

San Mateo County, CA
Page 6 of 9

**11.** **Insurance.** ACCS will maintain Comprehensive General Liability Insurance including premises liability, bodily injury, and product/completed operations coverage with a combined single limit of $1,000,000.00 per occurrence, with a $2,000,000.00 aggregate. ACCS will maintain non-owned/hired automobile liability insurance in the amount of $1,000,000.00 in aggregate. In reference to insurance coverage maintained by ACCS, such policies shall not be canceled, limited in scope, or non-renewed until after thirty (30) days written notice has been given to the office of the District Attorney. Certificates of Insurance evidencing the above coverages and clauses shall be made available to the District Attorney's office upon request.

**12.** **Indemnification.** ACCS agree to indemnify and hold harmless District Attorney, her officers, agents, and employees, from and against any and all third party actions and responsibilities, whether arising from personal injury, property damage, other damages or economic loss of any type, that may be asserted by any person or entity (together "Loss"), to the extent that such Loss was caused by ACCS arising out of or in connection with its respective responsibilities and authority under this contract. District Attorney agrees to indemnify and hold harmless ACCS, it's officers, agents, and employees from and against any and all third party actions and responsibilities, whether arising from personal injury, property damage, other damages or economic Loss of any type, that may be asserted by any person or entity, to the extent that such Loss was caused by the District Attorney arising out of or in connection with its respective responsibilities and authority under this contract. Notwithstanding anything to the contrary in this section, no party shall be obligated to indemnify the other party if and to the extent the Loss at issue was caused by the acts or omissions of the respective indemnitee.

**13.** **Status of ACCS Personnel.** ACCS employees are and shall remain the employees of ACCS, not the District Attorney. ACCS shall maintain all necessary licenses, permits, certificates, and approvals required by the laws of the United States, California, and all other appropriate governmental agencies. Evidence of such licenses, permits, and approvals shall be made available to the District Attorney's office upon request. ACCS certifies that all policies regarding employment and participation in the Program are in writing and shall be made available to the District Attorney and members of the public upon request. The foregoing notwithstanding, ACCS employees, when performing the administrative support requirements of this Agreement, shall be subject to the managerial control of the District Attorney at all times with respect to any communications ACCS employees may have with Participants. To the extent that ACCS employees have any interaction with Participants other than with respect to Seminar-related activities, ACCS employees shall exercise only ministerial, non-discretionary duties, at all times subject to the management and control of the District Attorney.

**14.** **Entire Agreement.** This Agreement supersedes any and all other agreements, either oral or written, between the parties hereto with respect to the subject matter hereof, and contains all of the agreements between the parties with respect to said matter. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, oral or otherwise, have been made by either party which are not embodied herein, and that no other agreements, statements, or promises not contained within this Agreement shall be valid or binding. The laws of the State of California and the United States of America shall govern all provisions contained within this Agreement.

9/12/2007

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

**EXHIBIT 5**

San Mateo County, CA
Page 7 of 9

**15.** **Notice.** Any notice to be given hereunder by any party to the other, shall be in writing and may be effected by personal delivery, or by registered mail, return receipt requested, addressed to the proper party, at the following addresses:

| | |
|---|---|
| **Michael Schreck** | **The Honorable James P. Fox** |
| **ACCS Chief Executive Officer** | **San Mateo County District Attorney** |
| 180 Avenida La Pata, Suite 200 | 400 County Center |
| San Clemente, CA 92673 | Redwood, CA 94063 |

**IN WITNESS THEREOF,** the parties hereunto, acting by and through their duly authorized officers, have caused this Agreement to be executed on the dates below.

_____James P. Fox_____          9-13-07
**DISTRICT ATTORNEY SIGNATURE**       **DATE**

_____[signature]_____            9-12-07
**ACCS CHIEF EXECUTIVE OFFICER SIGNATURE**   **DATE**

San Mateo County, CA
Page 8 of 9

## SCHEDULE 1

A. **RESTITUTION:** The victim's total loss associated with the face value of all bad checks, plus a bank charge up to $10.00 per check as per California Penal Code Section 1001.65(c).

B. **ADMINISTRATIVE FEE:** The amount of the fee shall not exceed $35 per check authorized pursuant to California Penal Code Section 1001.65(a). These fees shall be utilized in offsetting program administrative expenses and paid in accordance with the Payment Disbursement Schedule below.

C. **DIVERSION SEMINAR FEE:** The Diversion Program shall require eligible Participants to pay a $165 Diversion Seminar Fee ("Fee") for the current contract year of the Agreement, with $5 price increases annually thereafter on each subsequent Agreement anniversary. This Fee includes the opportunity to attend the Seminar or to complete a Personal Study Program where appropriate (which Seminar/Personal Study Program times, dates, and curriculum may be updated from time to time by ACCS to better serve Participants and for administrative efficiencies).

D. **CONVENIENCE FEE:** Participants utilizing a method of payment outlined in Section 7 (ii) or (iv) will be assessed up to a $10 convenience fee on each occasion applicable (which fee may be reasonably updated from time to time by ACCS). Any Convenience Fee shall be paid first and fully to ACCS to reimburse it for its processing fees and is not subject to the recovery and payment distribution schedule in the event of a partial payment.

E. **INCIDENTAL EXPENSE FEES:**

   **1. RESCHEDULING FEE:** Participants who fail to cancel their originally scheduled Seminar time without 48 hour advance notice or who fail to appear at their scheduled Seminar or who cancel any subsequently scheduled Seminars will be required to pay a $25 rescheduling fee for each occurrence.

   **2. PAYMENT FEE:** The Diversion Program shall require all Participants who have enrolled in a payment plan and miss their scheduled payment date (payment is postmarked more than five (5) days from the scheduled date or they underpay their payment plan amount) to pay a $10 late fee on each occasion applicable to cover the additional administrative expense resulting from the failure to comply with the scheduled payment plan(s).

   **3. OVERPAYMENT/HANDLING FEE:** All overpayment balances over $5 shall be paid to the Participant(s) within ninety (90) days after all Program requirements have been satisfied, less a $5 handling fee. All overpayments under $5 shall be retained by ACCS.

F. **PROGRAM COSTS:** All direct costs to the District Attorney resulting from mail services, banking fees, postal box rental and related mail costs, shall be charged against and paid from ACCS' portion of the Administrative Fees. ACCS shall bear all costs related to its personnel, supplies, and expenses.

## EXHIBIT 5

San Mateo County, CA
Page 9 of 9

G. **COMPENSATION:** ACCS shall receive 60% of the Administrative Fees and the District Attorney 40%. ACCS shall also receive 100% of the Diversion Seminar, Incidental Expense and Convenience Fees.

H. **PAYMENT DISBURSEMENT SCHEDULE:** Victim restitution receipts in prior months shall be disbursed by check (or other electronic transfer method per victim's request) to the victim no later than the 20th day of each month. ACCS' fees shall be disbursed weekly to ACCS (which frequency may be updated from time to time by ACCS as necessary). Bills for mail costs and postal box rentals shall be paid by ACCS according to vendor terms. The balance of the fees owed to the District Attorney for the prior month's receipts shall also be disbursed by the 20th day of each month.

I. **RECOVERY AND PAYMENT DISTRIBUTION:** Lump sum payments shall be distributed in their entirety according to the payment disbursement schedule under which victims are paid first. When partial payments are received, the following distribution priority shall be used: 50% of the partial payment is applied to the victim restitution balance (until satisfied). The remaining portion of the payment is applied first to the Diversion Seminar Fee and secondly to the Incidental Expense Fees (if any), and last to Administrative Fees (if any). In cases where there are multiple victims, restitution payments will be applied on a first-in first-out (FIFO) basis as determined by crime report filing date.

INITIAL HERE _____

9/12/2007

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

**EXHIBIT 5**