# Bad Check Restitution Executed Agreement

## Sonoma County, CA
## 11/7/05

CONFIDENTIAL AND PROPRIETARY. NOT FOR DUPLICATION OR DISTRIBUTION.



### ACCS
**THE DEFINITIVE AUTHORITY IN RESTITUTION RECOVERY**

180 AVENIDA LA PATA, SAN CLEMENTE CA 92673

ACCS0063524

**EXHIBIT 7**

# CONSULTING
# AND
# ADMINISTRATIVE SUPPORT SERVICES
# AGREEMENT

This Consulting and Administrative Support Services Agreement (the "Agreement") between American Corrective Counseling Services, Inc., a California corporation ("ACCS") and the District Attorney of Sonoma County, State of California ("District Attorney"):

## Recitals

(i) The District Attorney and ACCS have expressed interest in entering into this Agreement on the terms contained herein, and such terms shall remain valid and in effect for thirty (30) days from the date of execution by ACCS ("Courtesy Period") and will expire at that point should the Agreement not be jointly executed by the parties within the Courtesy Period.

(ii) The principal business activity of ACCS is the provision of educational seminars, consulting, and administrative support services to State and Judicial District prosecutors' offices that have adopted a pre-trial misdemeanor bad check diversion program ("Diversion Program"). These programs typically allow first time offenders (the "Participant") to avoid the prospect of criminal prosecution, provided the Participant attends an educational seminar ("Seminar") mandated by the prosecutorial authority addressing the causes and the prevention of bad check writing, pays a fee for the Seminar, and pays restitution to the victim of the bad check.

(iii) ACCS has extensive experience providing consulting, administrative support, and Seminars for Diversion Programs. More specifically, ACCS has developed proprietary Seminar materials for conducting Seminars, including extensive experience in staffing Diversion Program Seminars, and has acquired substantial knowledge with respect to the administrative and record management procedures necessary to operate an effective Diversion Program.

(iv) The District Attorney desires to retain ACCS to provide consulting services, to staff and to operate its Program Seminars, and to provide administrative support services as reasonably required by the District Attorney in conducting the Diversion Program. ACCS desires to perform these services for the District Attorney as specified herein.

(v) The District Attorney and ACCS acknowledge that the Diversion Program will be operated under the District Attorney's name, authority and control. It is specifically understood that:

(a) the District Attorney retains full prosecutorial discretion and does not delegate to ACCS any aspect of the exercise of prosecutorial discretion;

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063525

# EXHIBIT 7

(b) the content and frequency of the Seminars are to be approved by the District Attorney prior to the commencement of the Seminars;

(c) prerequisites for participation in the Diversion Program, including any requirement of payment of restitution to the victim, shall be established by the District Attorney and not by ACCS;

(d) the District Attorney retains the authority to contractually set or modify the Diversion Seminar Fees and terms of payment from the Participants;

(e) the format, content, and frequency of any oral or written communication with Participants concerning the payment of restitution or Diversion Seminar Fees is to be approved in advance by the District Attorney, along with any future changes of material consequence to the communications materials;

(f) the mailing of all written communications to Participants concerning the payment of restitution or Diversion Seminar Fees is to be approved by the District Attorney prior to the mailing, and any such written communication will be either generated or mailed by District Attorney personnel, by a mailing service or similar clerical service, or administered under this Agreement by ACCS; and

(g) the mailing address to which Participants are directed to respond will either be the District Attorney's mailing address, or a post office box held in the District Attorney's name.

**NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:**

1. **Retention of Services.** The District Attorney retains the services of ACCS as described herein, and ACCS agrees to perform in accordance with this Agreement.

2. **Term.** The term of this Agreement is three years, commencing upon execution of this Agreement by both parties and ACCS' mailing of the first Diversion Program notice letter ("Commencement Date"), and unless sooner terminated as provided herein, shall renew in successive one-year increments at the end of the initial three-year term.

3. **Services to Be Provided by ACCS.**

    (a) **Seminars.** ACCS will conduct all Diversion Program Seminars. In that regard, ACCS will provide qualified instructors to conduct the Seminars, provide its proprietary Seminar materials to Participants, lease the required facilities to conduct the Seminars, monitor the attendance at the Seminars, and communicate directly with Seminar Participants regarding scheduling, attendance, and related administrative details. Seminars shall be scheduled in convenient locations within or near Sonoma County and will be held as determined convenient and effective in serving Participants. Instructors will typically hold advanced degrees in a counseling related field (e.g., psychology or social work). ACCS will continue to develop and refine its Seminar curriculum and educational materials, and will conduct ongoing training and evaluation of all ACCS instructors. The Seminar is designed to remove many of the behavioral rationalizations surrounding the writing of bad checks, as well as focus on deficiencies in the areas of personal finance, communication, and stress management. Seminar sizes will average from 15 to 30 Participants, based on Participant

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063526

EXHIBIT 7

and instructor scheduling needs. An ACCS "Checks and Balances" personal study program (or equivalent future program) ("Personal Study Program") may also, as appropriate, be utilized in lieu of a live Seminars under certain circumstances, (e.g., if the Participant lives outside a reasonable distance from the Seminar site, etc.)

**(b) Consulting Services.** ACCS will provide the District Attorney with *pro forma* administrative forms and proposed procedural guidelines for the operation of the Diversion Program, which are to be reviewed, modified and approved by the District Attorney. ACCS will make its administrative personnel available to assist the District Attorney in the development of administrative procedures to be followed for the clerical and accounting functions of the Diversion Program. These procedures include the District Attorney's written communications to Participants, which may be updated from time to time by ACCS for administrative efficiencies, the mechanics of sorting the mail, depositing and accounting for Diversion Seminar Fees and restitution payments from Participants, disbursement of restitution payments to victims, and financial reporting.

**(c) Administrative Support.** ACCS shall provide clerical personnel for administrative, accounting, and reporting aspects of the Diversion Program, subject at all times to the managerial authority of the District Attorney. More specifically, ACCS shall:

(i) maintain thorough records to enable the generation of reports detailing the compliance and the disposition status on each Participant's case,

(ii) maintain a detailed current accounting record of all receipts and disbursements of the Diversion Program,

(iii) open and sort correspondence related to the Diversion Program and deposit Diversion Seminar Fees and restitution payments in a federally insured account to be held in trust for the District Attorney ("Account"),

(iv) prepare monthly reports which shall provide a summary of transactions and Diversion Program activity for the period, and

(v) maintain physical files, computer files, and facilities required for performance under this Agreement, and provide the necessary supplies and system access to enable the District Attorney to operate the Diversion Program.

**4. Responsibilities of the District Attorney.** The District Attorney shall establish the policies and procedures of the Diversion Program and instruct ACCS regarding the administrative requirements necessary for effective Diversion Program operation. The District Attorney shall establish eligibility criteria for all Participants in the Diversion Program, including specific Diversion Program completion criteria, and procedures regarding the management of cases for those individuals who fail to comply with Diversion Program requirements, including the payment of restitution and Diversion Seminar Fees.

**5. Designation of District Attorney's "Communications Liaison Officer."** The District Attorney's office shall designate one of its properly authorized employees as the Communications Liaison Officer (the "Communications Officer"). The Communications Officer shall be charged with final approval, signature, and coordination of all written communications to Participants concerning the Diversion Program, except for those communications relating exclusively to conducting and scheduling of Seminars, which is

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063527

EXHIBIT 7

the primary responsibility of ACCS. Furthermore, the Communications Officer shall authorize and supervise all communications with Participants concerning the terms and conditions of the Diversion Program. ACCS shall be responsible for all communications with Participants regarding all aspects of the Seminars, including attendance, location, rescheduling of Seminars, or other Seminar related matters. ACCS personnel shall direct any questions within the responsibility of the Communications Officer to the Communications Officer, and not discuss these issues with Participants.

6. **Compensation to ACCS.** ACCS is to be compensated from the proceeds of the Diversion Seminar Fees charged to the Participants, from ACCS' portion of the Administrative Fees (if any), and from Incidental Expenses (if any) charged to Participants for monitoring restitution, accounting costs associated with payment arrangements, and any other incidental costs authorized by law and the District Attorney. The authorized Diversion Seminar Fees, Administrative Fees (if any) and Incidental Expenses (if any) are set forth on Schedule 1 attached hereto.

7. **Funds and Disbursements.** Participants in the Diversion Program shall be instructed to remit payments: I) to a post office box maintained by the District Attorney, II) over the phone and/or Internet, (e.g., via credit/debit card, ACH or other EFT type transaction), iii) via Western Union (or equivalent service provider), or iv) other payment methods that may be available in the future, after which monies shall be deposited in a federally insured Account. Disbursements from the Account shall be made on a regular monthly cycle with the assistance of ACCS. A summary of all Account transactions shall be reported on a monthly basis, with supporting documentation made available for inspection upon request.

8. **Records Subject to Audit.** The Diversion Program books of accounts, records, and source documents shall be kept and made available at the request of the District Attorney with the cost of such presentation borne by ACCS. The District Attorney shall have the right to examine and audit the Diversion Program books and records and supporting source documents at any and all times. The cost of the audit shall be borne by ACCS if the audit shows an understatement of annual gross income of more than five (5) percent of the annual gross income determined on audit, or the audit demonstrates a material failure of ACCS to maintain accurate and complete books, records, accounts, and supporting documentation. All Diversion Program physical and electronic records shall be retained for a period of not less than three (3) years, with records relating to any litigation, or settlement of claims arising out of performance of this contract being retained for a period of not less than four (4) years.

9. **Termination.** ACCS may terminate this Agreement for cause upon thirty (30) days prior written notice. Proper cause shall be any material breach of the contract that is not cured by the breaching party within thirty (30) days of written notice of the breach. Proper cause shall also include any reduction in the amount of the Diversion Seminar Fee and related minimum charges for Diversion Program operation set forth on Schedule 1 attached hereto and incorporated by reference. The District Attorney may terminate this Agreement for any reason the District Attorney deems appropriate by providing ninety (90) days written notice. Either party may terminate this Agreement without cause upon ninety (90) days written notice given to the other party. In the event of a termination, the District Attorney shall give ACCS written "wind down" instructions. ACCS shall comply with the termination instructions in a manner that is consistent with recognized standards of prudent business practice. Compensation to both parties will continue throughout the process of closing operations.

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063528

**EXHIBIT 7**

10. **Confidentiality.** ACCS acknowledges and agrees to implement reasonable safeguards to protect the confidentiality of information obtained in the course of the Diversion Program, including the identity and personal information of Participants, the identity of persons who file bad check crime reports with the District Attorney, and the operations of the District Attorney. The District Attorney agrees to protect all proprietary information ACCS provides in connection with the performance of this Agreement, including ACCS communications materials, teaching materials, instructional guidelines, financial condition, business plans, customer identities and technical information. The parties agree on termination of this Agreement to refrain from using any proprietary or confidential information or materials unless such materials or information may become evidence in any criminal prosecution or civil action that affects Sonoma County of the State of California.

11. **Insurance.** ACCS will maintain Comprehensive General Liability Insurance including premises liability, bodily injury, and product/completed operations coverage with a combined single limit of $1,000,000.00 per occurrence, with a $2,000,000.00 aggregate, and non-owned/hired automobile liability in the amount of $1,000,000.00 in aggregate. In reference to insurance coverage maintained by ACCS, such policies shall not be canceled, limited in scope, or non-renewed until after thirty (30) days written notice has been given to the office of the District Attorney. Certificates of Insurance evidencing the above coverages and clauses shall be made available to the District Attorney's office upon request.

12. **Status of ACCS Personnel.** ACCS employees are and shall remain the employees of ACCS, not the District Attorney. ACCS shall maintain all necessary licenses, permits, certificates, and approvals required by the laws of the United States California, and all other appropriate governmental agencies. Evidence of such licenses, permits, and approvals shall be made available to the District Attorney's office upon request. ACCS certifies that all policies regarding employment and participation in the Program are in writing and shall be made available to the District Attorney and members of the public upon request. The foregoing not with standing, ACCS employees, when performing the administrative support requirements of this Agreement, shall be subject to the managerial control of the District Attorney at all times with respect to any communications ACCS employees may have with Participants. To the extent that ACCS employees have any interaction with Participants other than with respect to Seminar-related activities, ACCS employees shall exercise only ministerial, non-discretionary duties, at all times subject to the management and control of the District Attorney.

13. **Entire Agreement.** This Agreement supersedes any and all other agreements, either oral or written, between the parties hereto with respect to the subject matter hereof, and contains all of the agreements between the parties with respect to said matter. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, oral or otherwise, have been made by either party which are not embodied herein, and that no other agreements, statements, or promises not contained within this Agreement shall be valid or binding. The laws of the State of California and the United States of America shall govern all provisions contained within this Agreement.

14. **Notice.** Any notice to be given hereunder by any party to the other, shall be in writing and may be effected by personal delivery, or by registered mail, return receipt requested, addressed to the proper party, at the following addresses:

11/7/05

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063529

**EXHIBIT 7**

**Michael Schreck**  **The Honorable Stephan Passalacqua**
**ACCS Chief Executive Officer**  **Sonoma County District Attorney**
180 Avenida La Pata, Suite 200  600 Administration Drive
San Clemente, CA 92673  Santa Rosa, CA 95403

IN WITNESS THEREOF, the parties hereunto, acting by and through their duly authorized officers, have caused this Agreement to be executed on the dates below.

_____  11/14/05
DISTRICT ATTORNEY SIGNATURE  DATE

_____  11-7-05
ACCS CHIEF EXECUTIVE OFFICER SIGNATURE  DATE

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063530

**EXHIBIT 7**

## SCHEDULE 1

A. **RESTITUTION:** The victim's total loss associated with the face value of all bad checks, plus a service charge of $10.00 per check.

B. **ADMINISTRATIVE FEE:** The Diversion Program shall require all eligible Participants to pay an Administrative Fee in the amount of $35.00 per check as per California Penal Code section 1001.65. These fees shall be utilized in offsetting program administrative expenses and paid in accordance with the disbursement schedule below.

C. **DIVERSION SEMINAR FEE:** The Diversion Program shall require eligible Participants to pay a $150 Diversion Seminar Fee ("Fee") for the current contract year of the Agreement, with $5 price increases annually thereafter on each subsequent Agreement anniversary. This Fee includes the opportunity to attend the Seminar or to complete a Personal Study Program where appropriate (which Seminar/Personal Study Program times, dates, and curriculum may be updated from time to time by ACCS to better serve Participants and for administrative efficiencies).

D. **INCIDENTAL EXPENSES:**

   1. **RESCHEDULING FEE:** Participants who fail to cancel their originally scheduled Seminar time without 48 hour notice or who fail to appear at their scheduled Seminar or who cancel any subsequently scheduled Seminars will be required to pay a $25 rescheduling fee for each occurrence.

   2. **LATE PAYMENT/CONVENIENCE FEES:** The Diversion Program shall require all Participants who have enrolled in a payment plan and miss their scheduled payment date (payment is postmarked more than five (5) days from the scheduled date) to pay a $10 late fee to cover the additional administrative expense resulting from the failure to comply with the initial scheduled payment. Participants utilizing a method of payment outlined in Section 7 (ii) and (iv) will be assessed a $10 fee (which fee may be updated from time to time by ACCS).

E. **PROGRAM COSTS:** All direct costs to the District Attorney resulting from mail services, banking fees, postal box rental and related mail costs, shall be charged against and paid from ACCS' portion of the Administrative Fees. ACCS shall bear all costs related to its personnel, supplies, and expenses.

F. **COMPENSATION:** ACCS shall receive 65% of the Administrative Fees and the District Attorney 35%. ACCS shall also receive 100% of the Diversion Seminar Fees, Rescheduling, Convenience, and Late Payment Fees.

G. **PAYMENT DISBURSEMENT SCHEDULE:** Victim restitution shall be disbursed by check to the victim no later than the 20th day of each month for the prior month's receipts. ACCS' fees shall be disbursed weekly to ACCS (which frequency may be updated from time to time by ACCS for administrative efficiencies). Bills for mail costs and postal box rentals shall be paid according to vendor terms. The balance of the fees owed to the District Attorney shall also be disbursed by the 20th day of each month for the prior month's receipts.

ACCS PROPRIETARY AND CONFIDENTIAL
NOT FOR DUPLICATION OR DISTRIBUTION

ACCS0063531

**EXHIBIT 7**

H.  **RECOVERY AND PAYMENT DISTRIBUTION:** Lump sum payments shall be distributed in their entirety according to the payment disbursement schedule. When partial payments are received, the following distribution priority shall be used: 50% of the partial payment is applied to the victim restitution balance (until satisfied). The remaining portion of the payment is applied first to the Diversion Seminar Fee and secondly to the Administrative Fees (if any), and lastly to Incidental Expenses (if any). In cases where there are multiple victims, payments will be applied on a first-in first-out (FIFO) basis with respect to the crime report filing date.

INITIAL HERE _ARP_