1  FREEDMAN & TAITELMAN, LLP
   MICHAEL A. TAITELMAN (SBN 156254)
   mtaitelman@ftllp.com
2  JACQUELINE C. BROWN (SBN 177970)
   jbrown@ftllp.com
3  JOSHUA G. BLUM (SBN 249082)
   jblum@ftllp.com
4  1901 Avenue of the Stars, Suite 500
   Los Angeles, California 90067
5  Tel.: (310) 201-0005
   Fax: (310) 201-0045
6
   Attorneys for Defendant NATIONAL CORRECTIVE GROUP, INC.
7
8                      UNITED STATES DISTRICT COURT
9             FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
   CHRISTINA SMITH, LOIS ARTZ, ASHLEY          Civ. No. 3:10-cv-0010 JSW
11 HENDERSON, JANA SPERLING, and TONI
   NEILSON, on their own behalf and on behalf
12 of others similarly situated,                **CLASS ACTION**
13            Plaintiffs,                        DEFENDANT NATIONAL CORRECTIVE
                                                GROUP, INC.'S FIRST AMENDED
14       vs.                                    ANSWER TO SECOND AMENDED
                                                COMPLAINT
15 LEVINE LEICHTMAN CAPITAL
   PARTNERS, INC., LEVINE LEICHTMAN
16 CAPITAL PARTNERS III, L.P., LEVINE          **JURY TRIAL DEMAND**
   LEICHTMAN CAPITAL PARTNERS III,
17 LLC, MICHAEL SCHRECK, BRETT                 Courtroom:    11
   STOHLTON and NATIONAL
18 CORRECTIVE GROUP, INC. (dba
   Corrective Solutions),
19
             Defendants.
20
21
22
23
24
25
26
27
28

Defendant National Corrective Group, Inc. ("NCG") by and through its attorneys of record, Freedman & Taitelman, LLP, as and for its answer to the Second Amended Complaint ("SAC") filed by Plaintiffs Christine Smith, Lois Artz, Ashley Henderson, Jana Sperling, and Toni Neilson ("Plaintiffs"), and on behalf of others similarly situated, hereinafter admit or deny the allegations of the SAC as follows:

1.      NCG admits that Plaintiffs purport to bring a "civil RICO" case on behalf of California consumers against investment firms and individuals to recover damages and that Plaintiffs purport to seek injunctive relief. NCG denies the remaining allegations contained in paragraph 1 of the SAC.

2.      NCG admits that ACCS filed bankruptcy. NCG denies the remaining allegations contained in paragraph 2 of the SAC.

3.      NCG denies the allegations contained in paragraph 3 of the SAC.

4.      NCG denies the allegations contained in paragraph 4 of the SAC.

5.      NCG admits that Plaintiffs have filed this lawsuit. NCG denies the remaining allegations contained in paragraph 5 of the SAC.

6.      NCG denies that subject matter jurisdiction exists in this case under 18 U.S.C. § 1964, 15 U.S.C. § 1692k(d) or 28 U.S.C. §1331. However, even if this Court did have subject matter jurisdiction, the Court should not exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      NCG denies the allegations contained in paragraph 7 of the SAC.

8.      NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 8 of the SAC and on that basis denies the allegations contained therein.

9.      NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 9 of the SAC and on that basis denies the allegations contained therein.

10.      NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 10 of the SAC and on that basis denies the allegations

1    contained therein.

2         11.    NCG is without sufficient knowledge or information to form a belief as to the

3    allegations contained in paragraph 11 of the SAC and on that basis denies the allegations

4    contained therein.

5         12.    NCG is without sufficient knowledge or information to form a belief as to the

6    allegations contained in paragraph 12 of the SAC and on that basis denies the allegations

7    contained therein.

8         13.    NCG admits that Levine Leichtman Capital Partners, Inc. is a California

9    corporation with its principal place of business in Beverly Hills, California. NCG denies that

10   LLCP is a "person" as that term is used in 18 U.S.C. §1961(3), which is a legal conclusion. NCG

11   is without sufficient knowledge or information to form a belief as to the remaining allegations

12   contained in paragraph 13 of the SAC and on that basis denies the allegations contained therein.

13        14.    NCG admits that Levine Leichtman Capital Partners, III, L.P. ("LP") is a

14   California limited partnership. NCG denies that LP is a "person" as that term is used in 18

15   U.S.C. §1961(3), which is a legal conclusion. NCG is without sufficient knowledge or

16   information to form a belief as to the remaining allegations contained in paragraph 14 of the

17   SAC and on that basis denies the allegations contained therein.

18        15.    NCG admits that Michael Schreck ("Schreck") was American Corrective

19   Counseling Services, Inc.'s ("ACCS") and NCG's CEO. NCG denies that Schreck is a "person"

20   as that term is used in 18 U.S.C. §1961(3), which is a legal conclusion. NCG is without sufficient

21   knowledge or information to form a belief as to the remaining allegations contained in paragraph

22   15 of the SAC and on that basis denies the allegations contained therein.

23        16.    NCG admits that Brett Stohlton ("Stohlton") was an executive with ACCS and

24   NCG. NCG denies that Stohlton is a "person" as that term is used in 18 U.S.C. §1961(3), which

25   is a legal conclusion. NCG is without sufficient knowledge or information to form a belief as to

26   the remaining allegations contained in paragraph 16 of the SAC and on that basis denies the

27   allegations contained therein.

28        17.    NCG admits that Plaintiffs purport to refer to LLCP, LLCP III, Schreck, and

Stohlton as the "RICO Defendants" in their SAC. NCG denies that any of the "RICO

Defendants" are liable to Plaintiffs, or any member of the purported putative class, as alleged in

the SAC.

18.     NCG admits that ACCS was a corporation with its principal place of business

located at 180 Avenida La Pata, San Clemente, California and that ACCS is not a defendant in

this lawsuit. NCG denies that ACCS is an "enterprise" as that term is used in 18 U.S.C.

§1961(4), which is a legal conclusion and further denies the remaining allegations contained in

paragraph 18 of the SAC.

19.     NCG admits that ACCS was a defendant in class action lawsuits in the United

States, that on January 19, 2009 ACCS filed for chapter 11 relief in the United States District

Court in the District of Delaware, No. 09-10198, that on November 2, 2009, ACCS's chapter

11 liquidation plan was confirmed by that Court, and that the liquidation plan included a

settlement of the pending class action lawsuits against ACCS. NCG is without sufficient

knowledge or information to form a belief as to the allegation that the liquidation plan did not

release any third parties such as defendants in this action and on that basis denies the allegation

contained therein. NCG denies the remaining allegations contained in paragraph 19 of the SAC.

20.     NCG admits that it is a Delaware corporation, a subsidiary of LLCP and was

created to acquire the business assets of ACCS. NCG denies the remaining allegations

contained in paragraph 20 of the SAC.

21.     NCG admits that Plaintiffs are not suing it for the "RICO-based" claims and that

Plaintiffs purport to be suing it with respect to the other claims. NCG denies the remaining

allegations contained in paragraph 21 of the SAC, which contains a legal conclusion.

22.     NCG denies the allegation contained in paragraph 22 of the SAC that the

Defendants are "debt collectors" within the meaning of 15 U.S.C. §1692(a)6, which is a legal

conclusion. NCG further denies the remaining allegations contained in paragraph 22 of the

SAC.

23.     NCG denies the allegations contained in paragraph 23 of the SAC.

24.     NCG is without sufficient knowledge or information to form a belief as to the

1   allegations contained in paragraph 24 of the SAC and on that basis denies the allegations

2   contained therein.

3      25. NCG is without sufficient knowledge or information to form a belief as to the

4   allegations contained in paragraph 25 of the SAC and on that basis denies the allegations

5   contained therein.

6      26. NCG denies that ACCS's business was a "scheme". NCG is without sufficient

7   knowledge or information to form a belief as to the remaining allegations contained in paragraph

8   26 of the SAC and on that basis denies the allegations contained therein.

9      27. NCG is without sufficient knowledge or information to form a belief as to the

10  allegations contained in paragraph 27 of the SAC and on that basis denies the allegations

11  contained therein.

12     28. NCG admits that due to the costs of defending class action lawsuits, ACCS could

13  have defaulted on its obligations to LLCP III. NCG is without sufficient knowledge or

14  information to form a belief as to the remaining allegations contained in paragraph 28 of the

15  SAC and on that basis denies the allegations contained therein.

16     29. NCG admits that a class was certified in the *Del Campo* case in December 2008,

17  the District Court in *Rosario v. ACCS,* Civ. No 01-221 (M.D. Fla.) scheduled a hearing on

18  January 20, 2009 on cross-motions for summary judgment, and that a purported class action

19  lawsuit was filed against it in Pennsylvania. NCG denies the remaining allegations contained in

20  paragraph 29 of the SAC.

21     30. NCG admits that ACCS filed a bankruptcy petition on January 19, 2009 in order

22  to avoid foreclosure. NCG is without sufficient knowledge or information to form a belief as to

23  the remaining allegations contained in paragraph 30 of the SAC and on that basis denies the

24  allegations contained therein.

25     31. NCG denies the allegations contained in paragraph 31 of the SAC.

26     32. NCG denies that ACCS was a "collection business". NCG is without sufficient

27  knowledge or information to form a belief as to the remaining allegations contained in paragraph

28  32 of the SAC and on that basis denies the allegations contained therein.

33. NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 33 of the SAC and on that basis denies the allegations contained therein.

34. NCG denies the allegations contained in paragraph 34 of the SAC.

35. NCG denies the allegations contained in paragraph 35 of the SAC.

36. NCG denies the allegations contained in paragraph 36 of the SAC.

37. NCG denies the allegations contained in paragraph 37 of the SAC.

38. NCG admits that California "bad check diversion programs" are based on statutes. NCG denies the remaining allegations contained in paragraph 38 of the SAC, which are legal conclusions.

39. NCG denies the allegations contained in paragraph 39 of the SAC, which are legal conclusions.

40. NCG denies the allegations contained in paragraph 40 of the SAC, which are legal conclusions.

41. NCG denies the allegations contained in paragraph 41 of the SAC, which are legal conclusions.

42. NCG denies the allegations contained in paragraph 42 of the SAC, which are legal conclusions.

43. NCG denies the allegations contained in paragraph 43 of the SAC, which are legal conclusions.

44. NCG denies the allegations contained in paragraph 44 of the SAC, which are legal conclusions.

45. NCG denies the allegations contained in paragraph 45 of the SAC, which are legal conclusions.

46. NCG denies the allegations contained in paragraph 46 of the SAC.

47. NCG admits that a copy of the Consulting and Administrative Agreement between NCG and the District Attorney of San Mateo is attached as Exhibit A to the SAC. NCG denies the remaining allegations contained in paragraph 47 of the SAC.

48.    NCG denies the allegations contained in paragraph 48 of the SAC.

49.    NCG denies the allegations contained in paragraph 49 of the SAC, which are legal conclusions. NCG further denies the remaining allegations contained in paragraph 49 of the SAC.

50.    NCG denies the allegations contained in paragraph 50 of the SAC, which are legal conclusions. NCG further denies the remaining allegations contained in paragraph 50 of the SAC.

51.    NCG denies the allegations contained in paragraph 51 of the SAC.

52.    NCG denies the allegations contained in paragraph 52 of the SAC, which are legal conclusions. NCG further denies the remaining allegations contained in paragraph 52 of the SAC.

53.    NCG denies the allegations contained in paragraph 53 of the SAC.

54.    NCG denies the allegations contained in paragraph 54 of the SAC.

55.    NCG admits that it allocates fees pursuant to its agreement with the contracting district attorney. NCG denies the remaining allegations contained in paragraph 55 of the SAC.

56.    NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 56 of the SAC that a recent report stated that Los Angeles County prosecutor's office received more than $1 million from ACCS/NCG, and on that basis denies this allegation. NCG denies the remaining allegations contained in paragraph 56 of the SAC.

57.    NCG admits that a copy of the Letter Series of Approval for the San Mateo agreement is attached to the SAC as Exhibit C. NCG denies the remaining allegations contained in paragraph 57 of the SAC.

58.    NCG admits that its actions are done in conformity with its agreements with California district attorneys. NCG denies the remaining allegations contained in paragraph 58 of the SAC.

59.    NCG denies the allegations contained in paragraph 59 of the SAC.

60.    NCG denies the allegations contained in paragraph 60 of the SAC.

61.     NCG denies the allegation regarding the requirements under Penal Code §1001.62, which is a legal conclusion. NCG further denies the remaining allegations contained in paragraph 61 of the SAC.

62.     NCG denies the allegations contained in paragraph 62 of the SAC.

63.     NCG denies the allegations contained in paragraph 63 of the SAC.

64.     NCG denies the allegations contained in paragraph 64 of the SAC.

65.     NCG denies the allegations contained in paragraph 65 of the SAC.

66.     NCG denies the allegations contained in paragraph 66 of the SAC including its subparts.

67.     NCG admits that communications with check writers sent from the district attorney bad check restitution program use the respective district attorney's letterhead and/or logo and postal box. NCG denies the remaining allegations contained in paragraph 67 of the SAC.

68.     NCG denies the allegations contained in paragraph 68 of the SAC.

69.     NCG denies the allegations contained in paragraph 69 of the SAC.

70.     NCG denies the allegations contained in paragraph 70 of the SAC.

71.     NCG denies the allegations contained in paragraph 71 of the SAC.

72.     NCG denies the allegations contained in paragraph 72 of the SAC.

73.     NCG admits that a letter dated November 23, 2005 was sent from the Sonoma County District Attorney Bad Check Restitution Program to Lois Artz, that the letter speaks for itself, and that a copy of said letter is attached as Exhibit D to the SAC, that a letter dated August 17, 2009 was sent from the Merced County District Attorney Bad Check Restitution Program, the letter speaks for itself, and that a copy of said letter is attached as Exhibit E to the SAC. NCG denies the remaining allegations contained in paragraph 73 of the SAC.

74.     NCG denies the allegations contained in paragraph 74 of the SAC.

75.     NCG denies the allegations contained in paragraph 75 of the SAC.

76.     NCG denies the allegations contained in paragraph 76 of the SAC.

77.     NCG admits that letters dated April 23, 2009, May 27, 2009, June 11, 2009, July

23, 2009, August 10, 2009, and September 9, 2009 were sent from the San Mateo County District Attorney Bad Check Restitution Program to Christine Smith, that the letters speak for themselves, and that a copy of said letters are attached as Exhibits F through M to the SAC.

78.     NCG denies the allegations contained in paragraph 78 of the SAC.

79.     NCG denies the allegations contained in paragraph 79 of the SAC.

80.     NCG denies the allegations that "Class Fees" and "Other Fees" are not authorized under the Bad Check Diversion Act.  NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 80 of the SAC and on that basis denies the allegations contained therein.

81.     NCG denies the allegations contained in paragraph 81 of the SAC.

82.     NCG admits that on or about January 7, 2009, Christine Smith wrote a check in the amount of $23.14 to a Safeway store in San Mateo County, California. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 82 of the SAC and on that basis denies each and every allegation contained therein.

83.     NCG admits the allegations contained in paragraph 83 of the SAC.

84.     NCG denies that it received information about the bad check directly from Safeway. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 84 of the SAC and on that basis denies each and every allegation contained therein.

85.     NCG admits that letters the San Mateo County District Attorney Bad Check Restitution Program sent to Christine Smith used the San Mateo County District Attorney Bad Check Restitution Program letterhead, bore the seal of the County of San Mateo, and was signed by James P. Fox, District Attorney. NCG denies the remaining allegations contained in paragraph 85 of the SAC.

86.     NCG admits that the initial letter the San Mateo County District Attorney Bad Check Restitution Program sent to Christine Smith itemized the costs of participation in the San Mateo County Bad Check Restitution Program. NCG denies the remaining allegations contained in paragraph 86 of the SAC.

87.     NCG denies that it has an agreement with Safeway. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 87 of the SAC and on that basis denies each and every allegation contained therein.

88.     NCG admits that a letter dated April 23, 2009 was sent from the San Mateo County District Attorney Bad Check Restitution Program, that a copy of said letter is attached as Exhibit F to the SAC, and that the letter speaks for itself. NCG denies the remaining allegations contained in paragraph 88 of the SAC.

89.     NCG denies the allegations contained in paragraph 89 of the SAC.

90.     NCG admits that a letter dated May 27, 2009 was sent from the San Mateo County District Attorney Bad Check Restitution Program and that a copy of the letter is attached as Exhibit G to the SAC. NCG denies the remaining allegations contained in paragraph 90 of the SAC.

91.     NCG admits that a letter dated June 11, 2009 was sent from the San Mateo County District Attorney Bad Check Restitution Program and that a copy of the letter is attached as Exhibit H to the SAC. NCG denies the remaining allegations contained in paragraph 91 of the SAC.

92.     NCG admits that in June 2009, Smith contacted the San Mateo County District Attorney Bad Check Restitution Program and that she agreed to pay the balance in installment payments. NCG denies the allegation contained in paragraph 92 that there was a balance "demanded" to be paid.  NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 92 of the SAC and on that basis denies each and every allegation contained therein.

93.     NCG admits that a letter dated July 13, 2009 was sent from the San Mateo County District Attorney Bad Check Restitution Program, that the letter speaks for itself, and that a copy of said letter is attached as Exhibit I to the SAC. NCG denies the remaining allegations contained in paragraph 93 of the SAC.

94.     NCG admits that Smith sent in a payment of $10.00 to the San Mateo County District Attorney Bad Check Restitution Program, which was the last payment the San Mateo

County District Attorney Bad Check Restitution Program received, that letters dated July 23, 2009, August 10, 2009, September 9, 2009, and October 30, 2009, were sent from the San Mateo County District Attorney Bad Check Restitution Program, that the letters speak for themselves, and that a copy of said letters are attached as Exhibits J,K,L, and M to the SAC. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 94 of the SAC and on that basis denies them.

95.     NCG denies the allegations contained in paragraph 95 of the SAC.

96.     NCG denies the allegations contained in paragraph 96 of the SAC.

97.     NCG denies the allegations contained in paragraph 97 of the SAC.

98.     NCG denies the allegations contained in paragraph 98 of the SAC.

99.     NCG is without sufficient knowledge or information to form a belief as to the allegation contained in paragraph 99 of the SAC that Smith has not been prosecuted for violation of California Penal Code §476a or any other provision, and on that basis denies the allegation contained therein. NCG denies the remaining allegations contained in paragraph 99 of the SAC.

100.     NCG admits that in 2005, Lois Artz wrote a bad check to Cigarettes R Cheaper in the amount of $26.62 and a bad check to Grocery Outlet for $11.13. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 100 of the SAC, and on that basis denies the allegations contained therein.

101.     NCG admits that a letter dated November 23, 2005 was sent from the Sonoma County District Attorney Check Restitution Program, that the letter speaks for itself, and that a copy of said letter is attached as Exhibit D to the SAC. NCG is without sufficient knowledge or information to form a belief as to the allegation that Artz received the letter in November 2005, contained in paragraph 101 of the SAC, and on that basis denies the allegation contained therein.

102.     NCG admits that the sum of $196.62 referenced in the letter dated November 23, 2005 sent from the Sonoma County District Attorney Bad Check Restitution Program was itemized as stated in Exhibit D to the SAC. NCG denies the remaining allegations contained in paragraph 102 of the SAC.

103.     NCG denies the allegations contained in paragraph 103 of the SAC.

104.    NCG denies the allegation that the letter was sent from ACCS. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 104 of the SAC and on that basis denies the allegations contained therein.

105.    NCG denies the allegations contained in paragraph 105 of the SAC.

106.    NCG denies the allegation that ACCS sent the letter to Artz. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 106 of the SAC and on that basis denies the allegations contained therein.

107.    NCG is without sufficient knowledge or information to form a belief as to the allegations that Artz believed the district attorney was accusing her of committing a crime, that if she did not do everything demanded in the letter she might be arrested and prosecuted, and, as to Artz state of mind, and on that basis denies the allegations. NCG denies the remaining allegations contained in paragraph 107 of the SAC.

108.    NCG admits that $98.31 paid by Artz to the Sonoma County District Attorney Check Restitution Program covered the amount of the check, the returned item charge and $61.69 of the class tuition, the second payment of $164.64 was applied to the balance owed to the Sonoma County District Attorney Check Restitution Program. NCG is without sufficient knowledge or information to form a belief as to the allegation that Artz was informed that the "'district attorney' was also demanding payment", and on that basis denies this allegation.

109.    NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 109 of the SAC and on that basis denies the allegations.

110.    NCG admits that Artz submitted a doctor's note and was sent a home study booklet from the Sonoma County Check Restitution Program. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 110 of the SAC and on that basis denies the allegations.

111.    NCG is without sufficient knowledge or information to form a belief as to the allegations in paragraph 111 that Artz endured humiliation, embarrassment, emotional pain and depression, and that Artz spent several days conscientiously completing the home study program, and on that basis denies the allegations. NCG denies the remaining allegations contained in

1  paragraph 111 of the SAC.

2       112.    NCG admits that Ashley Henderson wrote a check to Target on or about August

3  28, 2008 in the amount of $84.76, that when Target attempted to deposit the check her account

4  was closed, and that her old bank did not honor the check. NCG is without sufficient knowledge

5  or information to form a belief as to the remaining allegations in paragraph 112 of the SAC and

6  on that ground denies them.

7       113.    NCG admits that information about the dishonored check was transmitted

8  electronically to the Stanislaus County Bad Check Diversion Program. NCG is without sufficient

9  knowledge or information to form a belief as to the remaining allegations contained in paragraph

10  113 of the SAC and on that ground denies them.

11       114.    NCG denies the allegations contained in paragraph 114 of the SAC.

12       115.    NCG admits that a letter dated January 7, 2009 is attached as Exhibit N to the

13  SAC and that the itemization contained in the document speaks for itself. NCG denies the

14  remaining allegations contained in paragraph 115 of the SAC.

15       116.    NCG admits that Henderson's case was sent to the Stanislaus County Bad Check

16  Diversion Program disputes and that there was a 30-day hold on her account. NCG is without

17  sufficient knowledge or information to form a belief as to the remaining allegations in paragraph

18  116 of the SAC and on that ground denies them.

19       117.    NCG is without sufficient knowledge or information to form a belief as to the

20  allegations in paragraph 117 of the SAC and on that ground denies them.

21       118.    NCG admits that Henderson's dispute was denied. NCG denies the remaining

22  allegations contained in paragraph 118 of the SAC.

23       119.    NCG denies the allegations contained in paragraph 119 of the SAC.

24       120.    NCG denies the allegations contained in paragraph 120 of the SAC.

25       121.    NCG admits that Henderson wrote a check to Target for $84.76. NCG is without

26  sufficient knowledge or information to form a belief as to the remaining allegations in paragraph

27  121 of the SAC and on that ground denies them.

28       122.    NCG admits that Henderson received notices dated March 2, 2009, March 26,

2009, March 30, 2009, April 23, 2009, and April 29, 2009. NCG denies the remaining allegations contained in paragraph 122 of the SAC.

123.    NCG denies the allegations contained in paragraph 123 of the SAC.

124.    NCG denies the allegations contained in paragraph 124 of the SAC.

125.    NCG denies the allegations contained in paragraph 125 of the SAC.

126.    NCG admits that on or about August 23, 2008, Jana Sperling wrote a check to Safeway in Alameda County in the amount of $62.59, which did not clear. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 126 of the SAC and on that ground denies them.

127.    NCG admits that the Alameda District Attorney Bad Check Diversion Program received information about the bad check via electronic transmission. NCG is without sufficient knowledge of information to form a belief as to the remaining allegations contained in paragraph 127 of the SAC and on that ground denies them.

128.    NCG denies the allegations contained in paragraph 128 of the SAC.

129.    NCG admits that a letter dated November 26, 2008 was sent from the Alameda County District Attorney Bad Check Restitution Program and that a copy of said letter is attached as Exhibit O to the SAC.

130.    NCG admits that a letter dated November 26, 2008 was sent from the Alameda County District Attorney Bad Check Restitution Program, that itemization of the accounting contained in the document speaks for itself, and that a copy of said letter is attached as Exhibit O to the SAC. NCG denies the remaining allegations contained in paragraph 130 of the SAC.

131.    NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 131 of the SAC and on that ground denies them.

132.    NCG denies the allegation contained in paragraph 132 of the SAC.

133.    NCG denies the allegations contained in paragraph 133 of the SAC.

134.    NCG is without sufficient knowledge or information to form a belief as to whether Sperling has paid any money, and has not been prosecuted, and on that ground denies them. NCG denies the remaining allegations contained in paragraph 134 of the SAC.

135.     NCG denies the allegations contained in paragraph 135 of the SAC.

136.     NCG denies the allegations contained in paragraph 136 of the SAC.

137.     NCG admits that on or about June 6, 2009, Toni Neilson wrote a check to a Save Mart store in Merced, California for $107.19, which did not clear. NCG is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 137 of the SAC and on that basis denies them.

138.     NCG admits that a letter dated August 17, 2009 was sent from the Merced County District Attorney Bad Check Restitution Program, that the document states the Merced County District Attorney Bad Check Restitution Program has received a report of criminal activity, and that a copy of said letter is attached as Exhibit E to the SAC. NCG denies the remaining allegations contained in paragraph 138 of the SAC.

139.     NCG is without sufficient knowledge of information to form a belief as to the allegations contained in paragraph 139 of the SAC and on that ground denies them.

140.     NCG admits that a letter dated August 31, 2009 was sent from the Merced County District Attorney Bad Check Restitution Program, that the document speaks for itself, and that a copy of said letter is attached as Exhibit P to the SAC. NCG denies the remaining allegations contained in paragraph 140 of the SAC.

141.     NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 141 of the SAC and on that ground denies them.

142.     NCG admits that a letter dated September 29, 2009 was sent from the Merced County District Attorney Bad Check Restitution Program, that the document speaks for itself, and that a copy of said letter is attached as Exhibit Q to the SAC. NCG denies the remaining allegations contained in paragraph 142 of the SAC.

143.     NCG denies the allegations contained in paragraph 143 of the SAC. NCG admits that the allocation of restitution, tuition, and other associated costs are made pursuant to agreements with the contracting district attorney and the district attorney and the bad check writer.

144.     NCG is without sufficient knowledge or information to form a belief as to the

allegations contained in paragraph 144 of the SAC and on that ground denies them.

145.    NCG denies the allegations contained in paragraph 145 of the SAC.

146.    NCG denies the allegations contained in paragraph 146 of the SAC.

147.    NCG admits that Plaintiffs purport to bring this case as a class action, but denies that the case is appropriate for class certification and denies the remaining allegations contained in paragraph 147 of the SAC.

148.    NCG denies the allegations contained in paragraph 148 of the SAC.

149.    NCG denies the allegations contained in paragraph 149 of the SAC.

150.    NCG denies the allegations contained in paragraph 150 of the SAC.

151.    NCG denies the allegations contained in paragraph 151 of the SAC.

152.    NCG denies the allegations contained in paragraph 152 of the SAC.

153.    NCG denies the allegations contained in paragraph 153 of the SAC, including its subparts.

154.    NCG incorporates all responses previously asserted as though set forth herein.

155.    NCG denies the allegations contained in paragraph 155, which is a legal conclusion.

156.    NCG denies the allegation that NCG is an "enterprise" as the term is used in 18 U.S.C. §1961(d), which is a legal conclusion and further denies all other allegations contained in paragraph 156 of the SAC.

157.    NCG denies the allegations contained in paragraph 157 of the SAC.

158.    NCG denies the allegations contained in paragraph 158 of the SAC, which are legal conclusions.

159.    NCG admits that Schreck was the President of NCG, he executed agreements with district attorneys on NCG's behalf, that Stolhton was a Vice President of NCG, and that both Schreck and Stohlton held executive positions with ACCS. NCG denies the remaining allegations contained in paragraph 159 of the SAC.

160.    NCG denies the allegations that Schreck's and Stohlton's conduct violates 18 U.S.C. §1341, which are legal conclusions. NCG further denies the remaining allegations

contained in paragraph 160 of the SAC.

161.    NCG denies the allegations contained in paragraph 161, which are legal conclusions.

162.    NCG denies the allegations that Schreck's and Stohlton's conduct violates 18 U.S.C. §1343, which are legal conclusions. NCG further denies the remaining allegations contained in paragraph 162 of the SAC.

163.    NCG denies the allegations contained in paragraph 163 of the SAC, which are legal conclusions.

164.    NCG denies the allegations that Schreck's and Stohlton's conduct affected commerce by extortion as defined in California Penal Code §518 and 18 U.S.C. § 1951(b)(2), which are legal conclusions. NCG denies the remaining allegations contained in paragraph 164 of the SAC.

165.    NCG denies the allegations contained in paragraph 165 of the SAC, which are legal conclusions.

166.    NCG denies the allegations contained in paragraph 166 of the SAC.

167.    NCG denies the allegations contained in paragraph 167 of the SAC.

168.    NCG denies the allegations contained in paragraph 168 of the SAC.

169.    NCG denies the allegations contained in paragraph 169 of the SAC.

170.    NCG denies the allegations contained in paragraph 170 of the SAC.

171.    NCG incorporates all responses previously asserted as though set forth herein.

172.    NCG denies the allegations contained in paragraph 172 of the SAC, which are legal conclusions.

173.    NCG denies the allegations contained in paragraph 173 of the SAC, which are legal conclusions.

174.    NCG denies the allegations contained in paragraph 174 of the SAC.

175.    NCG denies the allegations contained in paragraph 175 of the SAC.

176.    NCG denies the allegations contained in paragraph 176, which are legal conclusions.

177.   NCG denies that the administrative support services it provides, and ACCS provided, to California district attorneys' bad check diversion programs is/was subject to the FDCPA. NCG admits that 15 U.S.C. §1692p speaks for itself and that in the event the FDCPA did apply (which NCG expressly denies), NCG is operating within the statutory safe harbor and that ACCS operated within the statutory safe harbor. NCG denies the remaining allegations contained in paragraph 177 of the SAC.

178.   NCG denies the allegations contained in paragraph 178 of the SAC.

179.   NCG denies the allegations contained in paragraph 179 of the SAC.

180.   NCG denies the allegations contained in paragraph 180 of the SAC including its subparts.

181.   NCG denies the allegations contained in paragraph 181 of the SAC.

182.   NCG denies the allegations contained in paragraph 182 of the SAC.

183.   NCG denies the allegations contained in paragraph 183 of the SAC.

184.   NCG incorporates all responses previously asserted as though set forth herein.

185.   NCG denies the allegations contained in paragraph 185 of the SAC, which are legal conclusions. NCG admits that California Business and Professions Code §§17200 et seq. speaks for itself.

186.   NCG denies the allegations contained in paragraph 186 of the SAC.

187.   NCG denies the allegations contained in paragraph 187 of the SAC.

188.   NCG denies the allegations contained in paragraph 188 of the SAC.

189.   NCG denies the allegations contained in paragraph 189 of the SAC.

190.   NCG denies the allegations contained in paragraph 190 of the SAC.

191.   NCG incorporates all responses previously asserted as though set forth herein.

192.   NCG denies the allegations in paragraph 192 of the SAC, which are legal conclusions.

193.   NCG denies the allegations in paragraph 193, which are legal conclusions.

194.   NCG is without sufficient knowledge or information to form a belief as to the allegations contained in paragraph 194 of the SAC and on that basis denies them.

1    195.    NCG denies the allegations contained in paragraph 195 of the SAC.

2    196.    NCG is without sufficient knowledge or information to form a belief as to the

3    allegations contained in paragraph 196 of the SAC and on that basis denies them.

4    197.    NCG denies the allegations contained in paragraph 197 of the SAC.

5    198.    NCG denies the allegations contained in paragraph 198 of the SAC as they relate

6    to it. NCG further denies the allegations relating to the court holdings in *Schwarm v. Craighead*,

7    552 F. Supp. 2d 1056 (E.D. Cal. 2008) and *del Campo v. Mealing*, 2010 WL 2473586 (N.D. Cal.

8    June 3, 2010), which are legal conclusions. NCG is without sufficient knowledge or information

9    to form a belief as to the allegations pertaining to the other defendants contained in paragraph

10    198 of the SAC and on that basis denies them.

11    199.    NCG denies the allegations contained in paragraph 199 of the SAC.

12    200.    NCG denies the allegations contained in paragraph 200 of the SAC.

13    201.    NCG denies the allegations contained in paragraph 201 of the SAC as they relate

14    to it. NCG is without sufficient knowledge or information to form a belief as to the allegations

15    pertaining to the other defendants contained in paragraph 201 of the SAC and on that basis

16    denies them.

17    202.    NCG denies the allegations contained in paragraph 202 of the SAC as they relate

18    to it. NCG is without sufficient knowledge or information to form a belief as to the allegations

19    pertaining to the other defendants contained in paragraph 202 of the SAC and on that basis

20    denies them.

21    203.    NCG denies the allegations contained in paragraph 203 of the SAC.

22    204.    NCG incorporates all responses previously asserted as though set forth herein.

23    205.    NCG denies the allegations contained in paragraph 205 of the SAC, which are

24    legal conclusions.

25    206.    NCG denies the allegations contained in paragraph 206 of the SAC, which are

26    legal conclusions.

27    207.    NCG denies the allegations contained in paragraph 207 of the SAC as they relate

28    to it. NCG is without sufficient knowledge or information to form a belief as to the allegations

1  pertaining to the other defendants contained in paragraph 207 of the SAC and on that basis

2  denies them.

3       208.    NCG denies the allegations contained in paragraph 208 of the SAC.

4       209.    The section of the SAC after paragraph 208 is the Prayer for Relief, and as such,

5  does not require an answer. However, to the extent that the Prayer for Relief implies any liability

6  on the part of NCG, such liability is denied.

7

8  **AFFIRMATIVE DEFENSES**

9       210.    NCG has alleged defenses as set forth below to avoid the necessity of needing to

10  further amend the Answer. NCG recognizes that depending upon the development of facts, some

11  of the defenses may ultimately not be applicable. By such pleading, NCG also intends no

12  alteration of the burden of proof and/or burden going forward with the evidence that otherwise

13  exists with respect to any particular issue at law or in equity. Furthermore, all defenses are pled

14  in the alternative, and do not constitute an admission of liability or as to whether Plaintiffs are

15  entitled to any relief whatsoever. NCG alleges that it may have additional defenses or claims

16  available to it of which it is not aware. NCG reserves the right to assert additional defenses or

17  cross-claims, counterclaims, or third-party claims as may be revealed to be appropriate through

18  discovery or otherwise.

19  **FIRST AFFIRMATIVE DEFENSE**

20       211.    The SAC, and each and every claim asserted against NCG in the SAC, fails to

21  state claims upon which relief may be granted against NCG.

22  **SECOND AFFIRMATIVE DEFENSE**

23       212.    To the extent the FDCPA is found to apply (which NCG denies), NCG is

24  specifically exempt from liability under the FDCPA pursuant to 15 U.S.C. §1692p.

25  **THIRD AFFIRMATIVE DEFENSE**

26       213.    Neither Plaintiffs' claims, nor those claims of the purported members of the

27  putative class, based on the facts alleged in the SAC, are governed by the FDCPA. For this

28  reason, Plaintiffs' claims, or some of them, and those of the putative class, or some of them, are

1  barred in whole or in part because plaintiffs' lack standing.

2  **FOURTH AFFIRMATIVE DEFENSE**

3      214.    Application of the FDCPA to the Criminal Bad Check Diversion Programs

4  infringes on traditional state police powers in violation of the 10th Amendment to the United

5  States Constitution.

6  **FIFTH AFFIRMATIVE DEFENSE**

7      215.    Plaintiffs' claims, and the claims of each purported member of the putative class,

8  are barred in whole or in part, by the doctrine of unclean hands. Specifically, Plaintiffs and each

9  member of the putative class have engaged in unlawful and tortious conduct, including without

10  limitation, issuing checks in violation of California Penal Code section 476a, and making

11  misrepresentations, including that they were knowingly and voluntarily participating in the

12  Criminal Bad Check Diversion Program and that they would comply with the program's

13  requirements.

14  **SIXTH AFFIRMATIVE DEFENSE**

15      216.    Plaintiffs' claims, and the claims of each purported member of the putative class,

16  are barred by the doctrine of waiver. Specifically, Plaintiffs and each purported member of the

17  putative class were notified of their right to dispute the allegations and not participate in the

18  Criminal Bad Check Diversion Program. Notwithstanding, they knowingly and voluntarily

19  elected to enjoy the benefits of  participating in the Criminal Bad Check Diversion Program,

20  including without limitation, having all record of their bad check offense being wiped clean.

21  **SEVENTH AFFIRMATIVE DEFENSE**

22      217.    Plaintiffs, and the purported members of the putative class are estopped from

23  asserting the claims set forth in the SAC by virtue of their conduct, deeds, acts, words and

24  omissions, including without limitation, knowingly and voluntarily participating in the Criminal

25  Bad Check Diversion Program, which NCG justifiably relied upon to its detriment, by, among

26  other things, providing the educational class to the Plaintiffs, and the purported members of the

27  putative class.

28  ///

**EIGHTH AFFIRMATIVE DEFENSE**

218.    Plaintiffs, and the purported members of the putative class, are barred from recovering injunctive relief on the allegations in the SAC because there is an adequate remedy at law.

**NINTH AFFIRMATIVE DEFENSE**

219.    NCG alleges that Plaintiffs, and the purported members of the putative class, are barred from any legal or equitable relief under each of the purported claims in the SAC, by virtue of their prior breach of the agreement to participate in the Criminal Bad Check Diversion Program.

**TENTH AFFIRMATIVE DEFENSE**

220.    NCG alleges that Plaintiffs, and the purported members of the putative class, are barred from any legal or equitable relief under each of the purported claims in the SAC, to the extent NCG has offsetting claims, including without limitation, the value received by the Plaintiffs and the purported members of the putative class for services rendered, including, the bad check educational class.

**ELEVENTH AFFIRMATIVE DEFENSE**

221.    NCG alleges that any recovery or settlement Plaintiffs or the purported members of the putative class, may have obtained from such other individuals, firms, corporations, or entities over whom NCG has or had no control or right of control must reduce or bar altogether any recovery or judgment which plaintiffs might obtain from NCG.

**TWELFTH AFFIRMATIVE DEFENSE**

222.    NCG has complied with all applicable state and federal laws, statutes and regulations, and therefore cannot be held liable for any alleged damages suffered by Plaintiffs or any member of the purported putative class.

**THIRTEENTH AFFIRMATIVE DEFENSE**

223.    Plaintiffs' claims cannot and should not be maintained as a class action because those claims fail to meet the necessary requirements for certification as a class or collective action, including, without limitation, numerosity, commonality, typicality, predominance,

1  superiority, adequacy of the class representatives, adequacy of class counsel, and similarity.

2  **FOURTEENTH AFFIRMATIVE DEFENSE**

3  224.   Plaintiffs' damages, if any, and the damages of each purported member of the

4  putative class, if any, are the result of their own acts or omissions, including, without limitation

5  violating the California Penal Code. Accordingly, plaintiffs' damages, and the damages of each

6  purported member of the putative class cannot be attributed to the acts or omissions of NCG.

7  **FIFTEENTH AFFIRMATIVE DEFENSE**

8  225.   Plaintiffs' claims, and the claims of each purported member of the putative class,

9  are barred in whole or in part because Plaintiffs and said putative class members knowingly and

10  voluntarily submitted to the actions alleged against NCG in the SAC.

11  **SIXTEENTH AFFIRMATIVE DEFENSE**

12  226.   Plaintiffs' claims, and the claims of each of the purported members of the putative

13  class, or some of them, are limited, in whole or in part, because plaintiffs themselves were

14  careless and negligent in failing to read or otherwise acknowledge the requirements set forth in

15  the notices sent by the respective District Attorney Bad Check Diversion Program and thus

16  contributed to the proximate cause of their alleged losses. Consequently, any recovery by

17  plaintiffs or any member of the putative class should be reduced or eliminated based upon

18  principles of comparative fault.

19  **SEVENTEENTH AFFIRMATIVE DEFENSE**

20  227.   Plaintiffs' claims, and the claims of each purported members of the putative class,

21  or some of them, are limited in whole or in part, because plaintiffs failed to reasonably mitigate

22  their losses, which mitigation would have occurred had plaintiffs acted with reasonable

23  diligence.

24  **EIGHTEENTH AFFIRMATIVE DEFENSE**

25  228.   Plaintiffs, and the claims of each purported member of the putative class, have

26  failed to plead predicate acts grounded in allegations of fraud with the specificity required by

27  Rule 9(b) the Federal Rules of Civil Procedure.

28  ///

**NINETEENTH AFFIRMATIVE DEFENSE**

229.     Plaintiffs and each member of the purported putative class, could not, as a matter of law, have reasonably relied on the allegedly fraudulent representations allegedly made by NCG.

**TWENTIETH AFFIRMATIVE DEFENSE**

230.     Plaintiffs' claims, and the claims of each purported member of the putative class, fail because there is no legal relationship upon which any duty was or could possibly be owed by NCG to Plaintiffs or any member of the purported putative class.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

231.     Plaintiffs' claims, and the claims of each purported member of the putative class, for punitive damages are barred by the Due Process Clause of the United States Constitution, Amendments V and XIV and by the Due Process Clause of the Constitution of the State of California because the law of California governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages. A State may constitutionally award punitive damages only if the law of that State provides significant and effective procedural protections, which the laws of the State of California do not.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

232.     Plaintiffs' claim, and the claim of each purported member of the putative class, for punitive damages is barred by the Due Process Clause of the United States Constitution, Amendments V and XIV and by the Due Process Clause of the Constitution of the State of California because NCG lacked adequate notice either of the type of conduct that could warrant an award of punitive damages under the laws of the United States or the State of California, or of the amount of such damages that could be awarded. The lack of fair notice bars any award of punitive damages.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

233.     Plaintiffs' claim, and the claim of each purported member of the putative class, for punitive damages is barred by the Due Process Clause of the United States Constitution, Amendments V and XIV and by the Due Process Clause of the Constitution of the State of

1    California because the laws of the State of California fail to require that any award of punitive

2    damages bear a close relationship to appropriate civil fines or penalties established by the State

3    of California legislature, or by the administrative agencies under authority delegated by the State

4    of California legislature.

5                    **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

6              234.    Plaintiffs' claim, and the claim of each purported member of the putative class,

7    alleged against NCG, pled in reliance upon California *Business and Professions Code* section

8    17200 et seq., is barred to the extent that the statute is unconstitutionally vague in violation of the

9    United States Constitution Amendment XIV and the California Constitution Article I, §7.

10                   **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

11             235.    Plaintiffs' claim, and the claim of each purported member of the putative class,

12   pled in reliance upon California *Business and Professions Code* section 17200 et seq., is barred

13   to the extent that *Business and Professions Code* section 17200 et seq. violates NCG's due

14   process rights guaranteed by the Federal Constitution and the California Constitution.

15                   **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

16             236.    Plaintiffs' claim, and the claim of each purported member of the putative class,

17   pled in reliance upon California *Business and Professions Code* section 17200 et seq., is barred

18   because NCG's conduct was not unlawful.

19                   **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

20             237.    Plaintiffs' claim, and the claim of each purported member of the putative class,

21   pled in reliance upon California *Business and Professions Code* section 17200 et seq., is barred

22   because NCG's conduct was not unfair.

23                   **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

24             238.    Plaintiffs' claim, and the claim of each purported member of the putative class,

25   pled in reliance upon California *Business and Professions Code* section 17200 et seq., is barred

26   because NCG's conduct was not fraudulent.

27                   **TWENTY-NINTH AFFIRMATIVE DEFENSE**

28             239.    The Court should abstain from exercising jurisdiction over this case based upon

1   principles of federalism and comity.

2                    **THIRTIETH AFFIRMATIVE DEFENSE**

3   240.    The claims of Plaintiffs, and/or the claims of each purported member of the

4   putative class, are barred, in whole or in part, because the communications at issue with the bad

5   check writers are not attempts to collect consumer debts, but rather, contractual offers to

6   participate in the District Attorney's Criminal Bad Check Diversion Program, which includes,

7   participation in a voluntary educational program for the bad check writers.  A condition of

8   enrollment and consequently, participation in the educational program, is an agreement by the

9   bad check writer to pay criminal restitution. There is no consumer debt collection.  NCG's

10  administrative support services on behalf of District Attorneys pertains to state criminal law

11  matters only.  Consequently, any alleged wrongful conduct on the part of NCG was unintentional

12  and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably

13  adapted to avoid any such error.

14                  **THIRTY-FIRST AFFIRMATIVE DEFENSE**

15  241.    The challenged conduct, as alleged in the SAC, is and was privileged, so as to bar

16  any recovery by Plaintiffs, and/or and each purported member of the putative class.

17                 **THIRTY-SECOND AFFIRMATIVE DEFENSE**

18  242.    Plaintiffs have failed to join necessary and indispensable parties including the

19  district attorneys which have contractual agreements with NCG.

20                  **THIRTY-THIRD AFFIRMATIVE DEFENSE**

21  243.    The claims alleged in the SAC are barred, in whole or in part, by the doctrine of

22  prosecutorial immunity.

23                 **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

24  244.    NCG is not a debt collector as defined by the FDCPA.  NCG's administrative

25  support services, which include recovery of restitution on behalf of the State as well as returning

26  recovered restitutionary funds to the victims, are incidental to NCG's bona fide fiduciary

27  obligations to the district attorneys.  NCG's activities are therefore not subject to the FDCPA

28  pursuant to 15 U.S.C. § 1692a(6)(F)(i).

1    WHEREFORE, NCG demands judgment against Plaintiffs and each purported member

2    of the putative class, if any, as follows:

3         1.   Dismissing the SAC with prejudice;

4         2.   Plaintiffs and each purported member of the putative class, if any, take

5    nothing by reason of their SAC;

6         3.   That judgment be entered in favor of NCG; and

7         4.   Granting such other and further relief as this Court deems just and proper,

8    including awarding NCG the costs, interest, and attorneys' fees incurred by it in the defense of

9    this action.

10

11   DATED:  September 15, 2010          FREEDMAN & TAITELMAN, LLP

12

13

14                                 By:  /s/ Michael A. Taitelman
                                        MICHAEL A. TAITELMAN
15                                   Attorneys for Defendant NATIONAL
                                     CORRECTIVE GROUP, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2        NCG respectfully demands trial by jury.

3

4

5

6   DATED:  September 15, 2010                    FREEDMAN & TAITELMAN, LLP

7

8                                                 By:  /s/ Michael A. Taitelman
9                                                      MICHAEL A. TAITELMAN
                                                  Attorneys for Defendant NATIONAL
10                                                CORRECTIVE GROUP, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28