**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA SMITH, et al., | |
| Plaintiffs, | No. C 10-00010 JSW |
| v. | |
| LEVINE LEICHTMAN CAPITAL PARTNERS, INC., et al., | **ORDER DENYING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendants. | |

Now before the Court is the motion for final approval of class action settlement filed by Plaintiffs. This matter is now fully briefed and ripe for consideration. The Court finds that this matter is appropriate for disposition without oral argument and is deemed submitted. *See* Civ. L.R. 7-19(b). Accordingly, the hearing set for November 16, 2012 is HEREBY VACATED.[1]

In considering the motion for final approval before a class has been certified, "the district court must assess whether a class exists; '[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)). The Court must "review the requirements of Rule 23(a) and (b), which are 'designed to protect absentees by blocking unwarranted or overbroad class definitions' and 'demand undiluted, even heightened, attention in the settlement context.'" *Narouz v. Charter*

---

[1] The Court GRANTS the Objectors' request to file an opposition to Plaintiffs' motion for final approval and reply to the parties' responses to their objection.

United States District Court
For the Northern District of California

*Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 620). Moreover, as the Supreme Court has admonished, "Rule 23's requirements must be interpreted in keeping with Article III constraints." *Amchem*, 521 U.S. at 613.

The Court must also "carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness....'" *Staton*, 327 F.3d at 952-53 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Court considers a number of factors, such as "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* at 659 (citation omitted); *see also Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors"). Moreover, the settlement may not be the product of collusion among the negotiating parties. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Upon consideration of the parties papers, including the papers submitted by the Objectors, the Court finds the proposed settlement to be problematic. In conjunction with their proposed settlement, Plaintiffs altered the class definition of the *Smith* class to include any person who received a letter, regardless of whether or not such persons paid any fees. This alteration in the class definition significantly increases the number of parties from whom Defendants would receive releases if class members do not opt out of the class. Moreover, due to the increase in class size, the potential monetary recovery for individual class members is significantly diminished. According to Defendants, there are 636,626 members in the proposed classes in California and Pennsylvania. (*See* Declaration of Kim Schmidt, ¶¶ 5, 10.) Considering the class size, and taking into account the requested attorneys' fees, the costs of

1 notice and the *cy pres* payment, if each class member received a portion of the proposed
2 settlement, their pro rata share would be less than three dollars.

3     The lack of mutuality in the scope of releases is also problematic. The proposed release
4 from the class members would broadly release all claims class members may have against the
5 Defendants, and any party partnering with Defendants, arising out of the operation of the
6 diversion program through the "Effective Date" of the settlement. The "Effective Date" is one
7 business day after the settlement in the California class becomes final. The release the proposed
8 class members would receive in return would be limited to claims for failure to pay fees to
9 NCG. However the release does not include claims for nonpayment of class fees for a class
10 actually attended. Moreover, the release would not preclude NCG from continuing to contact
11 class members about the diversion program and/or to attempt to collect the fees challenged by
12 this lawsuit.

13     Moreover, the Court finds that notice provided to be troubling. Notice to class members
14 to alert them of their right to opt-out of the class must be "the best notice practicable under the
15 circumstances, including individual notice to all members who can be identified through
16 reasonable effort." *Amchem*, 521 U.S. at 617 (quoting Fed. Rule Civ. Proc. 23(c)(2)). The
17 Objectors point out that notice was only mailed to class members who were mailed letters by
18 National Corrective Group, Inc. ("NCG"), as opposed to those who were mailed letters by
19 American Corrective Counseling Services, Inc. ("ACCS"). The Objectors estimate that 58
20 percent of the proposed class members in California and 69 percent of the proposed class
21 members in Pennsylvania were not mailed the notice. The parties respond that it is likely that
22 between 20 and 25 percent of the mailing addresses of class members who received letters from
23 ACCS would be incorrect. However, that means that 75 to 80 percent of the proposed class
24 would receive notice through mail. In light of these percentages, the Court finds that mere
25 notice by publication to the significant portion of the proposed class who received letters from

1 ACCS is not the best notice practicable.[2] Moreover, the failure to provide sufficient notice
2 compounds the unfairness created by the expanded class definition and the broad release
3 required by class members who do not opt out.

4 Additionally, in light of the fact that Defendants have accurate mailing addresses for 75
5 to 80 percent of the proposed class members, it is not clear why the parties are requiring those
6 members to submit claims. For the proposed class members for whom Defendants have
7 accurate mailing addresses, Defendants could simply mail them a check. Similarly, the parties
8 have made the procedures for filing objections unduly burdensome. There is no reason to
9 require the submission of a telephone number, to require proof of class membership in light of
10 Defendants' records of class membership, or to require the objectors to mail their objections to
11 three different locations.

12 In terms of the requested service awards, Plaintiffs request $1,000 for each of the named
13 Plaintiffs. In support of this request, Plaintiffs submit the declaration by James C. Sturdevant
14 who summarily states that "the Class Representatives have played an active role in litigating
15 and monitoring the case and working with counsel in the preparation of pleadings and
16 negotiation of the settlement." (Declaration of James C. Sturdevant, ¶ 36.) Mr. Sturdevant does
17 not describe the contributions made by any individual named representative. Nor do Plaintiffs
18 provide any supporting declarations from the individual named representatives describing their
19 efforts and contributions. Moreover, Plaintiffs do not respond to the Objectors' accusation that
20 Plaintiffs' counsel did not discover until December 2011, that one of the named representatives,
21 Toni Neilson, had died almost six months earlier. If true, it does not appear that the named
22 class representatives played an active role in this litigation and the ensuing settlement
23 negotiations.

24 Whether to reward the named representatives for their efforts is within the Court's
25 discretion. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal.

---

[2] The Objectors further note that the notice does not describe the actual claims asserted in the litigation, describe the laws alleged, or attach a link to the operative complaints. *See* Fed. R. Civ. P. 23(c)(2)(B) (Notice to the class "must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses.").

4

...

1995) (citations omitted). Courts may consider the following criteria in determining whether to provide incentive awards: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Id*. (citations omitted). The Court finds that the parties fail to provide sufficient evidence demonstrating the proposed incentive awards are justified based on these factors.

Finally, the Court notes that the proposed injunctive relief does not appear to provide much relief or benefit for the class. Pursuant to the proposed settlement, NCG is only required to alter the letters sent for a period of two years. After that time, NCG is not prohibited from mailing out letters with the same language challenged by this lawsuit. Moreover, the proposed altered letters could still mislead recipients that the letters were sent by, or with individual authorization from, the district attorney and that the district attorney is accusing the recipients of violating the law.

Accordingly, the Court DENIES the motion for final approval of class action settlement. This Order is without prejudice to the parties seeking approval of a class action settlement if the parties are able to address the concerns noted above.

**IT IS SO ORDERED.**

Dated: November 15, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE